Elizabeth HALL, et al., Petitioners,

v.

HELICOPTEROS NACIONALES DE
COLOMBIA, S. A. ("HELICOL"),
Respondent.

No. C–243.

Supreme Court of Texas.

July 21, 1982.
Dissenting Opinion Oct. 6, 1982.
Rehearing Denied Oct. 6, 1982.

Helm, Pletcher & Hogan, George E.
Pletcher, Houston, for petitioners.

McCamish, Ingram, Martin & Brown,
James E. Ingram, John McCamish, Jr., and
Barry A. Chasnoff, San Antonio, for respondent.

ON MOTION FOR REHEARING

WALLACE, Justice.

*Our opinion of February 24, 1982, is withdrawn and this opinion is substituted therefor.*

Elizabeth Hall and the other plaintiffs in
the trial court (Hall) are the survivors of
four citizens of the United States killed in a
helicopter crash in Peru while working in
that country constructing a pipeline. Hall
sued Helicol, the owner and operator of the
helicopter which crashed, in Harris County,
Texas, in four separate causes of action.

Helicol entered a special appearance in each of the actions, to contest the jurisdiction of the Texas court pursuant to Rule 120a, Tex. R.Civ.P., all of which were overruled by the respective trial courts. The four actions were consolidated for trial resulting in a judgment for Hall. The court of civil appeals reversed the judgment of the trial court and ordered the case dismissed for lack of jurisdiction. 616 S.W.2d 247. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

The only issue before us is whether under the facts of this cause of action, was Helicol amenable to jurisdiction in Texas. Therefore, this Court must decide whether the trial court's exercise of jurisdiction over Helicol was consistent with the requirements of due process of law under the Constitution of the United States.

■ In 1974, Petro Peru, the Peruvian state owned oil company, made a contract with Williams-Sedco-Horn,[1] (referred to as Consorcio in their contract), a joint venture based in Houston, Texas, to construct a pipeline from the interior of Peru to the Pacific Ocean. The defendant, Helicol, was brought into the project by Williams-Sedco-Horn to provide necessary transportation of workers and supplies, by helicopter, to regions where there were no roads. Helicol was originally contacted by a Williams executive who had contracted with Helicol in the past. In response to that contact, the general manager of Helicol flew to Oklahoma, and then proceeded to Houston, Texas to negotiate with the three members of the joint venture. After reaching agreement on all terms of the contract in Houston, those terms were related to Helicol's office in Peru. The contract in its final form was approved by the Peruvian Air Force as required by Peruvian law, typed in Spanish and executed by representatives of all parties in Peru. Helicol did not maintain an office in Texas, had no designated agent for service of process in Texas, was not authorized to do business in Texas, performed no helicopter operations in Texas, and did not recruit employees in Texas.

The deceased workers here in question, were not Texas residents, but were all United States citizens. They were hired by Williams-Sedco-Horn, in Houston, Texas, and sent to Peru to work on the pipeline. The workers were killed in the crash of a Bell helicopter, owned and operated by Helicol in Peru, during their transportation pursuant to the contract between Helicol and Williams-Sedco-Horn.

In addition to negotiating this contract, Helicol committed all of the following acts in Texas:

a. Purchased substantially all of its helicopter fleet in Fort Worth, Texas;

b. Did approximately $4,000,000 worth of business in Fort Worth, Texas, from 1970 through 1976 as purchaser of equipment, parts and services. This consisted of spending an average of $50,000 per month with Bell Helicopter Company, a Texas corporation;

c. Negotiated in Houston, Harris County, Texas, with a Texas resident, which negotiation resulted in the contract to provide the helicopter service involving the crash leading to this cause of action (previously mentioned), and wherein Helicol agreed to obtain liability insurance payable in American dollars to cover a claim such as this.

d. Sent pilots to Fort Worth, Texas to pick up helicopters as they were purchased from Bell Helicopter and fly them from Fort Worth to Columbia;

e. Sent maintenance personnel and pilots to Texas to be trained;

f. Had employees in Texas on a year-round rotation basis;

1. Williams-Sedco-Horn is a joint venture composed of Williams International Sundamericana, Ltd., a Delaware corporation headquartered in Tulsa, Oklahoma, Sedco Construction Corporation, a Texas corporation, and Horn International, Inc., a Texas corporation.

g. Received roughly $5,000,000 under the terms and provisions of the contract in question here which payments were made from First City National Bank in Houston, Texas; and

h. Directed the First City National Bank of Houston, Texas to make payments to Rocky Mountain Helicopters pursuant to the contract in question. (Involved leasing of a large helicopter capable of moving heavier loads for Williams-Sedco-Horn.)

We hold that these contacts constitute sufficient minimum contacts to find Helicol amenable to the jurisdiction of the Texas courts.

In their briefs before this Court, all parties agreed that our opinion in *U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex.1977) controlled the disposition of this case.

In *U-Anchor,* we stated:

Article 2031b provides that a nonresident entering into a contract with a Texas resident performable in part by either party in Texas shall be deemed to be doing business in Texas.... We agree that in this respect, as well as with the respect to 'other acts that may constitute doing business,' Article 2031b reaches as far as the federal constitutional requirements of due process will permit. We let stand the statement in *Hoppenfeld v. Crook,* 498 S.W.2d 52 (Tex.Civ.App.—Austin 1973, writ ref'd n. r. e.) 'that the reach of Art. 2031b is limited only by the United States Constitution.' ... Furthermore, such a construction is desirable in that it allows the courts to focus on the constitutional limitations of due process rather than to engage in technical and abstruse attempts to consistently define 'doing business.'

■ In the *U-Anchor* opinion we specifically adopted the above language from *Hoppenfeld.* Also in *U-Anchor,* this Court approved the three-prong test set out in

*O'Brien v. Lanpar Company,* 399 S.W.2d 340 (Tex.1966). That three-prong test is:

(1) the nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

(2) the cause of action must arise from, or be connected with, such act or transaction; and

(3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice; consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

The second prong of the *O'Brien* test requiring that the cause of action must arise out of the contacts with the forum state, has been the subject of some controversy ever since the *O'Brien* test was adopted. The second prong is useful in any fact situation in which a jurisdiction question exists; and is a necessary requirement where the nonresident defendant only maintained single or few contacts with the forum. However, the second prong is unnecessary when the nonresident defendants presence in the forum through numerous contacts is of such a nature, as in this case, so as to satisfy the demands of the ultimate test of due process. Accordingly through the statutory authority of Art. 2031b Tex. Rev.Civ.Stat.Ann. there remains the single inquiry: is the exercise of jurisdiction consistent with the requirements of due process of law under the United States Constitution? This inquiry is frequently put into the following terms: "... due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of

fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940).

■ The U. S. Supreme Court has broadened the parameters of due process to allow inquiry into other "relevant factors." Recently in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) the Supreme Court reiterated that the relationship between the defendant and the forum must be such that it is "reasonable . . . to require the corporation to defend the particular suit which is brought there." Citing, *International Shoe,* supra. In looking to this reasonableness, the U. S. Court stated that the burden on the defendant:

> . . . while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, see *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 2 L.Ed.2d 223, 78 S.Ct. 199 [201] (1957); the plaintiff's interest in obtaining convenient and effective relief, see *Kulko v. California Superior Court,* [436 U.S. 84] at 92, 56 L.Ed.2d 132, 98 S.Ct. 1690 [at 1696], at least when that interest is not adequately protected by the plaintiff's power to choose the forum, cf. *Shaffer v. Heitner,* 433 U.S. 186, 211, n. 37, 53 L.Ed.2d 683, 97 S.Ct. 2569 [2583, n. 37] (1977); the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, see *Kulko v. California Superior Court,* supra, at 93, 98, 56 L.Ed.2d 132, 98 S.Ct. 1690 [at 1696, 1700].

*Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. at 291, 100 S.Ct. at 564. Therefore, our inquiry can go beyond the substantial contacts which Helicol maintains in Texas, and we may also look to this State's interest in adjudicating the dispute; and

Hall's interest in effective and convenient relief.

Texas has an interest in adjudicating this dispute. Hall is not a Texas resident, but is a citizen of this country. More importantly, Hall was hired in Houston, Texas, by a Texas resident. It cannot be questioned that this forum has an interest in protecting the employees of its "residents" (Williams-Sedco-Horn). This is especially necessary in light of the fact that Texas is the headquarters of countless international companies, and as a member of the "interstate judicial system," this State has an interest in obtaining the most efficient resolution of controversies and in furthering fundamental substantive social policies. (See above quote, citing *Kulko v. California Superior Court,* supra.)

Hall has a genuine interest and desire in obtaining convenient and effective relief. The U. S. Supreme Court directly considered the plaintiff's interest involved in *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In *McGee,* a California resident was suing a Texas insurance company as a beneficiary under a life insurance policy. The defendant's only contact with California had been its mailing of the policy to the state, and its receipt of premium payments from the decedent. The U. S. Supreme Court addressed the relative convenience of the parties and based their decision allowing maintenance of the suit in California on the State's interest in providing effective redress, and the fact that an individual claimant could not overcome the difficulties of maintaining an action in a foreign forum ". . . thus in effect making the company judgment proof." 355 U.S. at 223, 78 S.Ct. at 201. The Court did recognize the inconvenience that this worked on the defendant, but based on the contacts of the defendant, due process would not be offended. Admittedly this cause does not fall precisely within the facts of *McGee,* it does fall within its spirit.

Based on the considerations of the above discussion and looking to the requirements

of the *U-Anchor* test, we find that Helicol's numerous and substantial contacts do constitute "doing business" in this State and the trial court's actions do not offend due process.

The judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.

Concurring opinion by CAMPBELL, J., in which McGEE, J., joins.

Dissenting opinion by POPE, J., in which GREENHILL, C. J., and BARROW, J., join.

CAMPBELL, Justice, concurring.

I concur with the result of the opinion by Justice Wallace for these additional reasons.

The issue in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), was "whether, consistently with the due process clause of the Fourteenth Amendment, an Oklahoma court may exercise in personam jurisdiction over a non-resident automobile retailer and its wholesale distributor in a products liability action, when the defendants' only connection with Oklahoma is the fact that an automobile sold in New York to New York residents became involved in an automobile accident in Oklahoma." *Id.* at 287, 100 S.Ct. at 562. The question before this Court is whether, consistently with the due process clause of the Fourteenth Amendment, a Texas court may exercise in personam jurisdiction over a non-resident provider of helicopter services, when the defendant's connections with Texas were all of those listed in the opinion by Justice Wallace.

In *World-Wide,* there was no evidence that World-Wide or its retail distributor, Seaway, did any business in Oklahoma, shipped or sold any products to or in that state, had an agent to receive process there, or purchased advertisements in any media calculated to reach Oklahoma. During oral arguments before the U. S. Supreme Court, plaintiff's attorney conceded there was no showing that any automobile ever sold by World-Wide or Seaway had ever entered Oklahoma with the single exception of the car involved. *Id.* at 289, 100 S.Ct. at 563. Thus, *World-Wide* holds that driving a car through a state is not such "minimum contacts" to give that state jurisdiction in an action against a New York seller.

In reaching this decision, the U. S. Supreme Court stated:

Petitioners carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the state. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly through others, serve or seek to serve the Oklahoma market. In short, respondents seek to base jurisdiction on one isolated occurrence and whatever inferences can be drawn therefrom: the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma.

444 U.S. at 295, 100 S.Ct. at 566, 62 L.Ed. 2d at 500.

Applying that same language to the facts of this case, I would write: Helicol carries on much business in Texas. They close many purchases of helicopters and spare parts and negotiate contracts in Texas. They regularly secure the services of Bell Helicopter in training their pilots and repair technicians. They solicited business in Texas by sending a representative to Houston to negotiate with Williams-Sedco-Horn. The record shows they regularly buy helicopters and spare parts in Texas and seek Texas services for training their employees. They directly secure the services of the Texas markets, maintain employees in Texas on a year-round basis and 26 times sent officials of their company to Texas. This activity has continued since 1970. In this

multi-million dollar business in Texas, Helicol has availed itself of the privileges and benefits of Texas law. In short, our petitioners seek to base jurisdiction on many significant contacts in Texas that reflect a continuous general presence in Texas.

The U. S. Supreme Court, in *World-Wide,* was addressing the jurisdictional problem between states. However, we do not have the same problem as *World-Wide.* We do not have a dispute over jurisdiction between coequal sovereigns in a federal system. We are deciding jurisdiction between countries; as to citizens of the United States and a resident of Colombia. Therefore, "due process" in this case must be universal in its application.

Now, let us look at what *World-Wide* said about "minimum contacts" and reasonableness of the "forum" among the states, and apply those tests to our facts:

The concept of minimum contacts, in turn, can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their statutes as coequal sovereigns in a federal system.

The protection against inconvenient litigation is typically described in terms of "reasonableness" or "fairness." We have said that the defendant's contacts with the forum State must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* [326 U.S.] at 316 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057], quoting *Miliken v. Meyer,* 311 U.S. 457, 463 [85 L.Ed. 278, 61 S.Ct. 339 [342], 132 A.L.R. 1357] (1940). The relationship between the defendant and the forum must be such that it is "reasonable . . . to require the corporation to defend the particular suit which is brought there." [326 U.S. 310], at 317 [90 L.Ed. 95, 66 S.Ct. 154

[161] 161 A.L.R. 1057]. Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, see *McGee v. International Life Ins. Co.,* 355 U.S. 220 [223, 2 L.Ed.2d 223, 78 S.Ct. 199, 201] (1957); the plaintiff's interest in obtaining convenient and effective relief, see *Kulko v. California Superior Court,* [436 U.S.] at 92 [56 L.Ed.2d 132, 98 S.Ct. 1690, 1696], at least when that interest is not adequately protected by the plaintiff's power to choose the forum, cf. *Shaffer v. Heitner,* 433 U.S. 186, 211, n. 37 [53 L.Ed.2d 683, 97 S.Ct. 2569, 2583, n. 37] (1977); the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, see *Kulko v. California Superior Court,* [436 U.S.] at 93, 98 [56 L.Ed.2d 132, 98 S.Ct. 1690 at 1696, 1700].

444 U.S. at 291–92, 100 S.Ct. at 564.

The contacts of Helicol in Texas were not "minimal," they were "substantial." It is not unreasonable to require a company with the expertise in international business, as Helicol, to defend a suit in a state where it has conducted multi-million dollars of business. However, it is unreasonable to require the widows and children seeking relief here to go to a foreign country to prosecute their action.

This Court has an interest in adjudicating the dispute of these United States citizens. They do not have the power to select another state but must be removed to a foreign country. This Court has an interest in assuring these plaintiffs obtain convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to choose the forum country.

"Due process" is not a rigid, unchanging rule that courts could always determine by

an unchanging formula. The concept of "due process" is designed to meet the test of change and to protect the rights of American citizens in the 1980's, as it did when the Constitution was written. In *World-Wide,* it was stated:

The limits imposed on state jurisdiction by the Due Process Clause, in its role as a guarantor against inconvenient litigation, have been substantially relaxed over the years. As we noted in *McGee v. International Life Ins. Co.,* supra [355 U.S.] at 222–223 [2 L.Ed.2d 223, 78 S.Ct. 199, 201], this trend is largely attributable to a fundamental transformation in the American economy:

"Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."

The historical developments noted in McGee, of course, have only accelerated in the generation since that case was decided.

444 U.S. 292–93, 100 S.Ct. at 564–65.

The quote from *McGee* is as applicable to the facts of this case as it was to the *McGee* facts. It could be written: Today many commercial transactions touch two or more countries and may involve parties separated by continents or oceans. With this increasing internationalization of commerce has come a great increase in the amount of business conducted by mail and satellite communications across continental lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a country where he engages in economic activity.

The *McGee* court further stated: "Of course there may be inconvenience to the

insurer if it is held amenable to suit in California where it had this contract but certainly nothing which amounts to a denial of due process." 355 U.S. at 224, 78 S.Ct. at 201. In my opinion, the inconvenience to Helicol, considering their substantial contacts in Texas, is certainly nothing which amounts to a denial of due process.

In *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Supreme Court, in explaining the requirements of due process, stated:

The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but *it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.* [Emphasis added].

357 U.S. at 253, 78 S.Ct. at 1239.

This Court, in *U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex.1977), tested the jurisdiction of Texas courts over the Oklahoma resident by stating:

[T]he contacts of Burt with Texas are minimal and fortuitous, and he cannot be said to have "purposefully" conducted activities within the State. Burt's contacts with Texas were not grounded on any expectation or necessity of invoking the benefits and protections of Texas law, nor were they designed to result in profit from a business transaction undertaken in Texas. The contract was solicited, negotiated, and consummated in Oklahoma, and Burt did nothing to indicate or to support an inference of any purpose to exercise the privilege of doing business in Texas. Simply stated, Burt was a passive customer of a Texas corporation who neither sought, initiated, nor profited from his single and fortuitous contact with Texas.

553 S.W.2d at 763.

Applying the *U-Anchor* test and using the U-Anchor language, I find Helicol's con-

tacts are numerous and not fortuitous, as Helicol purposefully conducted activities within the state. Helicol's contacts with Texas were grounded on the expectation, or necessity, of invoking the benefits and protections of Texas law; and they were designed to result in profit from a business transaction undertaken in Texas. The contracts and contacts were solicited or negotiated in Texas and some consummated in Texas. Helicol's activities, therefore, did more than indicate or support an inference of purposefully exercising the privilege of doing business in Texas. Helicol was an active customer of Texas corporations and companies who sought, initiated, and hopefully profited from its many and purposeful contacts with Texas.

McGEE, J., joins in this concurring opinion.

POPE, Justice, dissenting.

I respectfully dissent. The former dissenting opinion handed down July 21, 1982, is withdrawn. The survivors of four non-residents who were killed in an airplane crash in the jungles of Peru, have sued the defendant Helicol in Houston, Texas. Helicol is a resident corporation of Colombia, South America. Neither the plaintiffs, the decedents, the defendant, nor the tort action have any connection with Texas. The court makes Texas the courthouse for the world, requiring only that the plaintiff show that the defendant had made purchases of supplies from some unrelated business located in Texas. I disagree with the court's opinion, because it is not grounded upon the correct facts and because our long-arm statute reaches only to "causes of action arising out of such business done in this State." Tex.Rev.Civ.Stat.Ann. art. 2031b.

The court mistakenly says that Williams-Sedco-Horn, a Texas joint venture, was the party that contracted with the Peruvian owned oil company, Petro Peru. The opinion also says that the defendant Helicol negotiated and made its agreement with Williams-Sedco-Horn in Houston, Texas. The true facts, as stated by the court of civil appeals are that Williams-Sedco-Horn was not the party who contracted either with the Peruvian oil company or with Helicol. The undisputed testimony was that Peru forbade a contract to construct the pipeline with any corporation unless it was a Peruvian company. The contract, written in Spanish and approved by the government, was with Peruvian-based Consorcio, not Williams-Sedco-Horn. The parties to the contract for the helicopters were Consorcio and Helicol. The court of civil appeals so found and enforced that finding by its further reference to paragraph 19 of the contract, which states, in the words of that court, "that all parties agree that Lima, Peru, is the residence for all related to the contract and that the parties submitted to the jurisdiction of Peru." The court of civil appeals made these other significant findings:

It [Helicol] does not conduct business, advertise, nor perform any helicopter operations in Texas. It has never had a Texas charter nor has it ever had a contract to perform any work in Texas. Helicol's operations are based solely in South America. It is difficult to conclude that Helicol had any expectation of availing itself of the benefits and protections of the law of the state of Texas. We can find no indication that Helicol intended to make a profit from any business deal undertaken in Texas. *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483 (5th Cir. 1974).

### Article 2031b Requires a Nexus to Business Done in This State.

Article 2031b expressly requires a *nexus* between the helicopter crash and the contacts relied upon to justify jurisdiction. The nexus requirement in Texas is found in the clear wording of the statute itself. Section 3 of article 2031b provides:

Any foreign corporation, association, joint stock company, partnership, or non-

resident natural person that engages in business in this State, irrespective of any Statute or law respecting designation or maintenance of resident agents, and does not maintain a place of regular business in this State or a designated agent upon whom service may be made *upon causes of action arising out of such business done in this State,* the act or acts of engaging in such business within the State shall be deemed equivalent to an appointment by such foreign corporation, joint stock company, association, partnership, or nonresident natural person of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceedings *arising out of such business done in this State,* wherein such corporation, joint stock company, association, partnership, or non-resident natural person is a party or is to be made a party.

Tex.Rev.Civ.Stat.Ann. art. 2031b, § 3 (emphasis added).[1]

Article 2031b was enacted in the wake of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), which greatly expanded the jurisdictional potential of the various states. The Supreme Court reasoned in *International Shoe* that the exercise of jurisdiction over a nonresident defendant satisfies due process when the defendant has had "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Id.* at 316, 66 S.Ct. at 158. This standard was broader in its effect than the "long-arm" statutes then employed in most states, including Texas.[2] Most states, like Texas, responded to the action of the Supreme Court by enacting statutes aimed at taking advantage of the expanded limits of potential jurisdiction. While the reach of a particular statute could always be coextensive with constitutional confines outlined by the Supreme Court, states were not compelled to assert jurisdiction that far. *See Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 440, 72 S.Ct. 413, 415, 96 L.Ed. 485 (1952); *Prejean v. Sonatrach, Inc.,* 652 F.2d 1260, 1264 (5th Cir. 1981). Some states took advantage of the full range of jurisdiction allowed. *See, e.g.,* Fla.Stat.Ann. § 48.081(5) (allowing jurisdiction over unrelated causes of action when a foreign corporation has a "business office" in the state and engages in the transaction of business there); Wis.Stat.Ann. § 801.-05(1) (jurisdiction over unrelated causes of action permitted when an individual carries on "substantial and not isolated activities" in the state). *See also* Uniform Interstate and International Procedure Act § 1.02 (jurisdiction may be asserted as to unrelat-

---

1. Section 2 of article 2031b also requires a nexus, although this section was not the basis for exercise of jurisdiction in the present case. Section 2 provides:

    When any foreign corporation, association, joint stock company, partnership, or non-resident natural person, though not required by any Statute of this State to designate or maintain an agent, shall engage in business in this State, in any action in which such corporation, joint stock company, association, partnership, or non-resident natural person is a party or is to be made a party *arising out of such business,* service may be made by serving a copy of the process with the person who, at the time of the service, is in charge of any business in which the defendant or defendants are engaged in this State, provided a copy of such process, together with notice of such service upon such person in charge of such business shall forthwith be sent to the defendant or to the defendants [sic] principal place of business by registered mail, return receipt requested.

    Tex.Rev.Civ.Stat.Ann. art. 2031b, § 2 (emphasis added).

2. Article 2031b became effective August 10, 1959. Prior to that time, Texas had no general jurisdictional statute. Instead, jurisdiction was based upon a nonresident motorist statute, Tex. Rev.Civ.Stat.Ann. art. 2039a, and upon several statutes applying to nonresidents in specific circumstances, such as Tex.Ins.Code Ann. arts. 3.65, 3.66, 21.38 § 6; Tex.Bus.Corp.Act Ann. arts. 2.11, 8.10; Tex. Non-Profit Corp.Act Ann. art. 8.09; Tex.Rev.Civ.Stat.Ann. arts. 2031, 2031a, 2032, 2033, 2033b. *See* Thode, *In Personam Jurisdiction; Article 2031b, The Texas "Long Arm" Jurisdiction Statute; And the Appearance to Challenge Jurisdiction in Texas and Elsewhere,* 42 Texas L.Rev. 279, 304 n.165 (1964) [hereinafter cited as Thode].

ed causes of action when a defendant has his principal place of business in the state). Texas and other states wrote more restrictive statutes. Texas included the requirement that the jurisdiction be limited to causes of action arising from local activity.[3]

Jurisdiction statutes express the limits of a state's interest, in acquiring jurisdiction over nonresident defendants.[4] Article 2031b limits Texas' interest, to suits arising out of acts done in this state.[5] A desire to gain jurisdiction over nonresidents for unre-

3. The nexus requirement of article 2031b was contained in the original version of the act and has remained there unchanged since enactment. Comment, *The Texas Long-Arm Statute, Article 2031b: A New Process Is Due,* 30 Sw.L.J. 747, 747 (1976). The statute is thought to have been adapted from the 1947 Vermont "long-arm" statute, which also contains a nexus requirement. The pertinent portion of that statute provides:

> If a foreign corporation makes a contract with a resident of Vermont to be performed in whole or in part by either party in Vermont, or if such foreign corporation commits a tort in whole or in part in Vermont against a resident of Vermont, such acts shall be deemed to be doing business in Vermont ... and shall be deemed equivalent to the appointment ... of the secretary of state of Vermont ... to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings ... *arising from or growing out of such contract or tort* ....

Vt.Stat.Ann. title 12, § 855, *quoted in* Thode, *supra* at 305 n.167 (emphasis added). Other statutes adopted with similar provisions include: Ill.Rev.Stat. ch. 110, § 17(1); Md.Ann. Code, Courts and Judicial Proceedings, § 6 103; N.Y.Civ.Prac.Law and Rules § 302; Ohio Rev.Code Ann. § 2307.382. *See also Precision Polymers, Inc. v. Nelson,* 512 P.2d 811, 813 (Okla.1973) (construing Okla.Stat. title 12, §§ 187, 1701.03):

> Under the above holding if it does not appear from the record that plaintiff's cause of action arises out of or is based upon the same acts of defendant alleged to confer jurisdiction in personam of the defendant, plaintiff may not invoke the provisions of § 187, supra, to acquire jurisdiction of defendant. This holding is in harmony with the language of § 187, which limits its application "to any cause of action arising, or which shall have arisen, from doing any" of the acts therein enumerated.

The Oklahoma statute requires a nexus notwithstanding the fact that the act has been construed to extend to constitutional limits. *See Roberts v. Jack Richards Aircraft Co.,* 536 P.2d 353, 355 (Okla.1975).

4. The United States Supreme Court has frequently looked to jurisdiction statutes to determine the extent of a state's expressed interest in acquiring jurisdiction over a particular law-

suit. In *Hanson v. Denckla,* 357 U.S. 235, 252, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), the Court distinguished the previous case of *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), by stating:

> This case is ... different from *McGee* in that there the State had enacted special legislation (Unauthorized Insurers Process Act) to exercise what *McGee* called its "manifest interest" in providing effective redress for citizens who had been injured by nonresidents engaged in an activity that the State treats as exceptional and subjects to special regulation. Cf. *Travelers Health Assn. v. Virginia,* 339 U.S. 643, 647–49 [70 S.Ct. 927, 929–930, 94 L.Ed. 1154]; *Doherty & Co. v. Goodman,* 294 U.S. 623, 627 [55 S.Ct. 553, 554, 79 L.Ed. 1097]; *Hess v. Pawloski,* 274 U.S. 352 [47 S.Ct. 632, 71 L.Ed. 1091].

*See also Kulko v. California Superior Court,* 436 U.S. 84, 98, 98 S.Ct. 1690, 1700, 56 L.Ed.2d 132 (1978) ("California has not attempted to assert any particularized interest in trying such cases in its courts by, *e.g.,* enacting a special jurisdictional statute."); *Iowa Electric Light and Power Co. v. Atlas Corp.,* 603 F.2d 1301 (8th Cir. 1979); Comment, *Federalism, Due Process, and Minimum Contacts: World-Wide Volkswagen Corp. v. Woodson,* 80 Colum.L. Rev. 1341, 1345 (1980).

5. This is another way of saying that the legislature has expressed an interest in providing a forum for state residents who are injured by activities of nonresidents performed within the state's boundaries, and to require that the nonresident bear the costs of injuries caused by their activities in the state. That these considerations were factors in the drafting of the provisions of article 2031b is reflected indirectly in one commentator's call for legislative action prior to the enactment of the statute. *See* Wilson, *In Personam Jurisdiction Over Non-Residents: An Invitation and a Proposal,* 9 Baylor L.Rev. 363 (1957). The proposed draft of a statute included by Professor Wilson in his article contained a nexus requirement identical to the one found in article 2031b. This proposed draft is considered by some to have served as a model for the first five sections of the statute adopted by the legislature. Thode, *supra* at 303 n.151.

lated actions arising from activities outside the state is not reflected in the history of the statute or in the act's clear and unambiguous wording. Certainly, the legislature could have drafted the statute in language expressly extending its effect to the full extent permitted by the Constitution, as it did in Tex.Fam.Code Ann. § 3.26 (permitting the exercise of jurisdiction over a nonresident respondent "if there is any basis consistent with the constitution of this state or the United States for the exercise of the personal jurisdiction"), or it could have left out the nexus requirement, as in Tex.Bus. Corp.Act Ann. art. 8.10 (providing for service of process on foreign corporations authorized to transact business in the state). Absent such legislative action, however, we must enforce the clear provisions of article 2031b as presently written. *See generally Fox v. Burgess,* 157 Tex. 292, 297, 302 S.W.2d 405, 409 (1957); 2A Sutherland on Statutory Construction § 46.04 (4th ed. 1973).[6]

Two prior opinions by this court hold that the nexus was required and in both cases, it was present. In *O'Brien v. Lanpar Company,* 399 S.W.2d 340, 342 (Tex.1966) we upheld an Illinois default judgment against O'Brien, a nonresident Texas corporation whose president went to Illinois and employed the plaintiff as its attorney. We then stated this three-prong requisite for jurisdiction over a nonresident:

"* * * Such would appear to be: (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation."

*U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex.1977) was the next time this court wrote on this subject. U-Anchor, a Texas corporation, solicited a contract with defendant Burt in Oklahoma to place advertising displays at points along Oklahoma highways. Burt agreed to pay U-Anchor $80.00 a month for 36 months and to make the payments at U-Anchor's office in Amarillo, Texas. We held that U-Anchor's cause of action against Burt satisfied the nexus requirement of article 2031b. We wrote that it was "connected with the contractual obligation assumed by Burt and partially performable in Texas." *Id.* at 762. We held, however, that Burt could not be sued in Texas because U-Anchor failed to satisfy the first and third requirements of *O'Brien, supra* at 763. As to the first requirement, we held that Burt's contacts with Texas were not purposefully conduct-

---

**6.** It has been contended that the statute, article 2031b, was originally enacted to extend Texas "long-arm" jurisdiction to the full limits allowed after *International Shoe,* and that, if constitutional limits were actually broader than the legislature then believed, or if those limits have since been expanded, the statute's scope should likewise be enlarged in order to reach to the *maximum extent possible. This argument is* defective, however, for several reasons. First, article 2031b was enacted *after Perkins v. Benguet Consolidated Mining Co., supra,* which held that states could, in rare instances, exercise jurisdiction over unrelated causes of action. 342 U.S. at 445–47, 72 S.Ct. at 418–19. Second, even assuming that article 2031b was initially intended to be coextensive with due process, and due process was at that time believed to always require a nexus, we cannot assume that the drafters would have extended the statute to constitutional limits had the true limits been known, or when the limits were expanded. Perhaps the legislature was willing to extend article 2031b to constitutional limits only so long as a nexus was required. Finally, statutes drafted and enacted in other states near the time that article 2031b was written contained provisions authorizing the exercise of jurisdiction over unrelated causes of action in some cases, indicating that at least some legislatures had the idea that such an exercise of jurisdiction was constitutional. *See, e.g.,* Md.Ann.Code, Courts and Judicial Proceedings, § 6–102; Wis.Stat.Ann. § 801.05(1).

ed activities within Texas. Concerning the third requirement, we held that Burt's mailing of checks for payment to U-Anchor in Amarillo was a minimal contact. In contrast with those few contacts, we wrote that the solicitation, negotiation and consummation of the contract in Oklahoma showed that Burt might reasonably expect enforcement to be governed by Oklahoma rather than Texas law.

There is more reason here than in *U-Anchor* to deny Texas jurisdiction. The four plaintiffs worked for Consorcio. The contract fixed jurisdiction in Peru. Billings for work had to be made by Helicol to Consorcio in Peru. In *U-Anchor,* we held that Burt was no more than a passive customer of a Texas corporation, in that instance, the very party who was sued. In this case, however, Helicol has been pulled from Peru to Texas because it has been a customer of Bell Helicopter in Fort Worth. It had transactions with a company that in no way was connected with this litigation. *U-Anchor* is no support for the majority opinion.

The majority opinion disregards the statutory requirement that suit may be brought against a foreign corporation "upon causes of action arising out of such business done in this State."

The construction of article 2031b, here urged, conforms to that of the Fifth Circuit in several recent decisions. In *Prejean v. Sonatrach, Inc.,* 652 F.2d 1260 (5th Cir. 1981), one defendant, Beech, had extensive contacts with Texas, all unrelated to the cause of action. These contacts were similar to Helicol's activities in Texas, but were much more extensive. For example, Beech entered into an $11.1 million subcontract with Bell Helicopter in Fort Worth for the production of airframe assemblies, and had produced these for Bell continuously since 1967 under contracts exceeding $72 million. *Id.* at 1270 n.19. In addition, Beech had two employees residing and conducting business in Texas. A local corporation wholly owned by the defendant had sold and serviced aircraft manufactured by Beech. These contacts constituted "doing business" in Texas, but the court concluded that jurisdiction in Texas could not be asserted because the activities were unrelated to the cause sued upon. They did not have the "slightest causal relationship with the decedent's wrongful death." *Id.* at 1270.

In *Jim Fox Enterprises, Inc. v. Air France,* 664 F.2d 63 (5th Cir. 1981), the defendant, Air France, was doing "a thriving business in Texas." *Id.* at 65. It had a ticket office at Houston's Intercontinental Airport and a district sales office downtown. It listed six local telephone numbers in the Houston telephone directory, leased Texas real estate, employed Texas residents, and paid Texas employment and personal property taxes. Gross receipts from passenger ticket sales in Texas totalled in excess of $59 million. Nevertheless, the court in *Jim Fox* recognized that article 2031b requires a nexus between the cause of action and the contacts with Texas, and that Air France's contacts, being unrelated to the cause of action, were insufficient to support jurisdiction.

In another case, *Placid Investments, Ltd. v. Girard Trust Bank,* 662 F.2d 1176 (5th Cir. 1981), it was undisputed that the defendant did business in Texas. As noted by the court, the defendant maintained bank accounts in Texas, owned Texas real estate, and received revenue from Texas sources. *Id.* at 1178. None of these contacts, however, "gave rise" to the cause of action. As a result, the Fifth Circuit concluded, the causal relationship or nexus requirement in article 2031b was not met, and jurisdiction could not be asserted.

### Due Process

When a defendant has established a general business presence in the state, characterized by "substantial and continuous activity," that state may take jurisdiction over the defendant for unrelated causes of action. *Perkins v. Benguet Consolidated Mining Co., supra* 342 U.S. at 438, 445, 448, 72 S.Ct. at 414, 418, 419; *O'Neal v. Hicks Brokerage Co.,* 537 F.2d 1266, 1268 (4th Cir.

1976); *Seymour v. Parke, Davis & Co.,* 423 F.2d 584, 585–86 (1st Cir. 1970); *W. H. Elliott & Sons Co. v. Nuodex Products Co.,* 243 F.2d 116, 122 (1st Cir.), *cert. denied,* 355 U.S. 823, 78 S.Ct. 30, 2 L.Ed.2d 38 (1957). *See also* R. Weintraub, Commentary on the Conflict of Laws 145 (2d ed. 1980); Restatement (Second) of Conflict of Laws § 35(3) (1971).[7]

The term "substantial and continuous activity" has a distinct meaning when used in the context of due process. It suggests that the individual or corporate defendant is enough of an "insider" in the forum that he may be safely relegated to the state's political processes. Brilmayer, *How Contacts Count: Due Process Limitations on State Court Jurisdiction,* 1980 Sup.Ct.Rev. 77, 87 (1980). Achievement of such a position requires more of the defendant than "minimum contacts." Instead, the defendant must establish some close substantial connection with the state approaching the relationship between the state and its own residents.[8] It was upon such exception to the rule—the defendant's operating its cor-

7. The reason for placing emphasis upon contacts related to the cause of action has to do with the need to show a state interest in assuming jurisdiction over the nonresident defendant. As explained in *Curtis Publishing Co. v. Birdsong,* 360 F.2d 344, 346–47 (5th Cir. 1966): "There must be a rational nexus between the fundamental events giving rise to the cause of action and the forum State which gives that State sufficient interest in the litigation before it may constitutionally compel litigants to defend in a foreign forum."

The United States Supreme Court had made it clear that a state's interest in subjecting a nonresident to its judicial jurisdiction is a fundamental factor to be considered in cases of this kind. In *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the interest of the state was obvious in that the suit was brought by the state itself, for unpaid taxes. In *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), the validity of the exercise turned upon California's paramount interest in the litigation. The Court noted the state's manifest interest in protecting its residents, stating: "These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State." In *Hanson v. Denckla,* 357 U.S. 235, 251–52, 78 S.Ct. 1228, 1238–39, 2 L.Ed.2d 1283 (1958), the Court emphasized the *absence* of a substantial state interest, distinguishing *McGee.* The Court explained:

The cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State. In that respect, it differs from *McGee International Life Ins. Co.,* 355 U.S. 220, [78 S.Ct. 199, 2 L.Ed.2d 223], and the cases there cited. In *McGee,* the nonresident defendant solicited a reinsurance agreement with a resident of California. The offer was accepted in that State, and the insurance premiums were mailed from there until the insured's death. Noting the interest California has in providing effective redress for its residents when nonresi-

dent insurers refuse to pay claims on insurance they have solicited in that State, the Court upheld jurisdiction because the suit "was based on a contract which had substantial connection with that State." In contrast, this action involves the validity of an agreement that was entered without any connection with the forum State.

Contrary to this court's conclusion on rehearing that Texas has an interest in adjudicating this case because the plaintiffs are United States citizens, cases demonstrate that state interest in litigation is consistently derived from a state's desire to protect its own citizens and property and to effectuate its own regulatory policies. *See, e.g., Blount v. Peerless Chemicals, Inc.,* 316 F.2d 695, 697 (2d Cir.), *cert. denied,* 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963); *Compania de Astral v. Boston Metals Co.,* 205 Md. 237, 107 A.2d 357 (1954), *cert. denied,* 348 U.S. 943, 75 S.Ct. 365, 99 L.Ed. 638 (1955). *See also* Comment, *Federalism, Due Process, and Minimum Contacts: World-Wide Volkswagen Corp. v. Woodson,* 80 Colum.L.Rev. 1343, 1345 (1980).

8. This relationship is most commonly characterized by the fact that the forum state is the habitual residence, place of incorporation, or principal place of business for the defendant. *See Seymour v. Parke, Davis & Co., supra* at 587: "If the plaintiff has some attachment to the forum, or if the defendant has adopted the state as one of its major places of business, we would have no question of the right of the state to subject the defendant to suit for unconnected causes of action." *See also* Hill, *Choice of Law and Jurisdiction in the Supreme Court,* 81 Colum.L.Rev. 960 (1981); Restatement (Second) of Conflict of Laws § 35, comment e (1971): "The individual's activities in the State may ... be so continuous and substantial as to justify the exercise of judicial jurisdiction over him as to causes of action arising from activities in other states. This is particularly likely to be true in a situation where the individual's principal place of business is in the State."

porate headquarters in the forum state—that the United States Supreme Court upheld the exercise of jurisdiction over an unrelated cause of action in *Perkins v. Benguet Consolidated Mining Co., supra*.[9]

The court in this case has applied the "minimum contacts" standard. The error in this reasoning is that the nexus requirement is satisfied and becomes unnecessary, not upon a showing of "minimum contacts," but upon a demonstration of the defendant's *substantial* and *continuous* activity in the forum. Absent a showing of such activity, the nexus requirement becomes a highly significant factor. Texas should not assume jurisdiction over this case that involves nonresident plaintiffs and a nonresident defendant when the cause of action arises out of facts totally unrelated to the forum state.

A separate concurring opinion filed on rehearing contends that the "long arms" of state jurisdiction should extend more elastically when reaching for nonresident defendants who are citizens of other countries. While this argument may appeal to those who contend that noncitizens should receive less due process than United States citizens, *cf. Plyler v. Doe*, —— U.S. ——, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *Truax v. Raich*, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915), it is nevertheless inconsistent with the way due process has been applied in previous cases. Although such a contention is rarely raised, cases dealing with jurisdictional issues invariably apply the same due process standards to citizens and noncitizens alike. *See, e.g., Jim Fox Enterprises v. Air France*, 664 F.2d 63 (5th Cir. 1981); *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260 (5th Cir. 1981); *Hutson v. Fehr Brothers, Inc.*, 584 F.2d 833 (8th Cir. 1978); *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir. 1975); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974); *Bryant v. Finnish National Airline*, 15

N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965). *See also* A. Ehrenzweig & E. Jayme, Private International Law vol. II at 22 (1973) (neither party's citizenship affects an American court's jurisdiction).

The court has established Texas as a "magnet" forum, drawing to its courts the trial of any lawsuit involving a defendant who has ever made purchases in Texas.

I would affirm the court of civil appeals.

GREENHILL, C. J., and BARROW, J., join in this dissent.

---

9. *See Seymour v. Parke, Davis & Co., supra* at 587 (limiting *Perkins* to its facts); Newton, *Conflict of Laws*, 34 Sw.L.J. 385, 394 (1980) ("The proper characterization of *Perkins* . . . is

that it never offends traditional notions of fair play and substantial justice for a defendant to be sued in his own backyard, no matter where the cause of action arose.")