**C & H TRANSPORTATION CO., INC.,**
**Plaintiff-Appellant,**

**v.**

**JENSEN AND REYNOLDS CONSTRUCTION COMPANY and Par Industries, Inc., Defendants-Appellees.**

No. 83–1425
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 21, 1983.

Pulley & Cole, Ralph W. Pulley, Jr., H.N. Cunningham, III, Dallas, Tex., for plaintiff-appellant.

Brooks & Brooks, Barry J. Brooks, Dallas, Tex., for Par Industries, Inc.

Thompson, Coe, Cousings & Irons, David M. Taylor, Dallas, Tex., for Jensen & Reynolds Const. Co.

Before GEE, POLITZ, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Plaintiff C & H Transportation, Inc. (C & H) appeals the district court's grant of the

motions to dismiss of defendants Par Industries, Inc. (Par) and Jensen & Reynolds Construction Co. (Jensen & Reynolds) on the basis of lack of in personam jurisdiction. This Court affirms the district court's grant of the motions to dismiss of both defendants.

Plaintiff C & H, a motor common carrier, brought this action under the Revised Interstate Commerce Act,[1] seeking payment of freight charges for transportation services it performed. These services involved movement of crane parts from New Iberia, Louisiana, to Seattle, Washington. C & H is a Texas corporation with its principal office and place of business in Dallas County, Texas. Defendant Par is a Louisiana corporation with its principal place of business in New Iberia, Louisiana. Par neither has an office nor conducts business in the State of Texas. Par was the consignor that loaded the equipment at its facilities in New Iberia. Defendant Jensen & Reynolds is a California corporation with its principal place of business in California. Jensen & Reynolds has no office in Texas, has no license to do business in Texas, and has not conducted business in Texas.

Jensen & Reynolds contracted with Manitou Equipment Corp. (Manitou) in the State of Washington to lease crane parts for use in construction jobs. At that time, Manitou's crane parts were in the possession of defendant Par in New Iberia, Louisiana. Jensen & Reynolds claims that Manitou contracted with Transmaster, Inc., a freight forwarder in Seattle, Washington, to ship Manitou's equipment to Foss Alaska Lines (Foss) in Seattle.[2] According to David Jensen, president of Jensen & Reynolds, Manitou, after obtaining Jensen's approval, contracted with Transmaster for a specific price not to exceed $30,000 in shipping costs. C & H denies any knowledge of such a contract as well as any dealings between itself and Transmaster. C & H notes that Transmaster did not appear on any of its shipping documents.

Some period of time after Manitou allegedly contracted with Transmaster, David Jensen called Manitou to inquire where his leased equipment was. According to Jensen, Manitou put him in touch with Transmaster who in turn put him in touch with C & H's terminal manager in Tacoma, Washington. A three-way conference call then took place involving C & H's offices in Washington, C & H's offices in Dallas, and Jensen.[3] In addition to informing C & H where the equipment was to be sent and to whom it was to be delivered, Jensen told C & H to send the freight bill to Manitou.

C & H transported the equipment from New Iberia to Seattle, Washington via northern Texas. After receiving C & H's bill from Manitou in August 1981, Jensen complained to Manitou about the charges which exceeded $30,000.[4] According to Jensen, Manitou told him to send a written complaint to C & H. Jensen then wrote C & H a letter protesting the freight bill on Manitou stationery and signed "David Jensen, President." Although Jensen meant to sign as president of Jensen & Reynolds, C & H understood that Jensen had signed in the capacity of president of Manitou. In January 1982, Jensen & Reynolds mailed a check for $30,000 to C & H at its offices in Dallas, Texas.

■ Plaintiff alleges jurisdiction over both defendants pursuant to the Texas "long-arm" statute, Article 2031b(4), which provides, in pertinent part, that any foreign corporation "shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas

---

**1.** 49 U.S.C. §§ 10743, 10761 & 10762.

**2.** C & H claims that it was led to believe that Jensen & Reynolds was the consignee of the shipment and that Foss was Jensen & Reynolds' agent. Apparently, however, Foss was the steamship company hired by Jensen & Reynolds to transport the crane parts from Seattle to Alaska.

**3.** Jensen claims that it was his understanding that C & H had assumed Transmaster's obligations to ship the equipment.

**4.** The freight bills totaled $42,895.72.

to be performed in whole or in part by either party in this State ...." The district court granted Par's motion to dismiss on the basis of a lack of statutory jurisdiction. The grant of the motion to dismiss as to Par must be affirmed. There is no record evidence that Par entered into a contract with C & H. Indeed, C & H makes no claim that it contracted with Par. The district court was therefore correct in granting Par's motion to dismiss for C & H's failure to satisfy the requirements of Article 2031b(4).

 As for Jensen & Reynolds, the district court assumed compliance with the statutory requirements [5] but granted the motion to dismiss on the constitutional basis of a lack of "minimum contacts" between Jensen & Reynolds and the State of Texas. The court found that it would offend the traditional notions of fair play and substantial justice for Texas to exercise jurisdiction over Jensen & Reynolds on the basis of no more than (1) a three-way conference call involving Jensen in the State of Washington, C & H in the State of Washington, and C & H in Texas concerning details of shipping goods and (2) movement of the goods through the State of Texas. The court further found that C & H s choice of a route through Texas was not an act which

was purposefully conducted by Jensen & Reynolds in Texas. The court therefore found that the first and third prongs of the *O'Brien* test [6] had not been satisfied.

We agree with the district court that the exercise of jurisdiction over Jensen & Reynolds by the State of Texas does not comport with the basic due process requirements of the United States Constitution. For purposes of clarity, this Court notes that although the district court spoke in terms of a three-pronged test for meeting the requirements of constitutional due process, the constitutional test is only two-pronged. The defendant must have some minimum contacts with the state resulting from an affirmative act or acts on its part, and it must not be unfair or unreasonable to require the nonresident defendant to defend the suit in the forum. *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026, 1028 (5th Cir.1983); *Southwest Offset, Inc. v. Hudco Publishing Co.,* 622 F.2d 149, 152 (5th Cir.1980). Since the instant case does not involve the second prong of the *O'Brien* test (the requirement of a nexus between the cause of action and the defendant's contacts with the state),[7] the district court's reference to the test as three-pronged in no way impairs its analysis.[8] It is beyond

---

5. The court credited plaintiff's contention that a contract was formed between C & H and Jensen & Reynolds during the course of the three-way conference call.

6. The three-prong test to determine whether constitutional due process requirements have been met when a state exercises jurisdiction over the person of a defendant was set out in *O'Brien v. Lanpar Co.,* 399 S.W.2d 340, 342 (Tex.1966). The test is as follows:
 (1) the nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;
 (2) the cause of action must arise from, or be connected with, such act or transaction; and
 (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice; consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the re-

spective parties, and the basic equities of the situation.

7. Here, any nexus requirement is fully satisfied—C & H's cause of action for unpaid freight charges arises from Jensen & Reynolds contacts with Texas (phone call, movement of its goods through Texas, and mailing of a check).

8. Although in *Hall v. Helicopteros Nacionales,* 638 S.W.2d 870 (Tex.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1270, 75 L.Ed.2d 493 (1983), the Texas Supreme Court extended the reach of article 2031b to the limits of due process, language in the opinion indicates that the second prong, the nexus requirement, is constitutionally required in cases where the nonresident *defendant only maintained single or few* contacts with the forum:

 The second prong is useful in any fact situation in which a jurisdiction question exists; and is a necessary requirement where the nonresident defendant only maintained single or few contacts with the forum. However, the second prong is unnecessary when the

question that at least one prong—the affirmative act prong—is not satisfied in the instant case. In *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) the Supreme Court stated: "[I]t is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

Here, it cannot be said that Jensen & Reynolds purposely availed itself of the privilege of conducting business within Texas or that it invoked the benefits and protections of Texas law. Jensen & Reynolds' only contacts with Texas consisted of the three-way conference call (with Jensen in the State of Washington), the movement of the goods it had leased through Texas on their way to Washington, and the sending by mail of a $30,000 check to C & H in Dallas. As for the conference call involving C & H's Dallas offices, the call was apparently initiated by the C & H terminal manager in Tacoma, even though it was Jensen who had contacted C & H in Tacoma to inquire about the equipment. Even attributing the initiative for this call to Jensen & Reynolds, this sole use of interstate commerce is "insufficient to be characterized as purposeful activity invoking the benefits and protections of the forum state's laws." *See Hydrokinetics,* 700 F.2d at 1029 (extensive communications between Texas and Alaska in the development of the contract insufficient to count as purposeful activity). Secondly, the routing of the equipment through Texas was undoubtedly not the result of any affirmative act by Jensen & Reynolds—C & H, as carrier, was responsi-

ble for the choice of route. Performance—delivery of the equipment—was not to occur in Texas, but in the State of Washington. *Compare Hydrokinetics,* 700 F.2d at 1029 & 1030 [distinguishing the case at bar from *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483 (5th Cir.1974) in that the contract in *Cousteau* required delivery of the product in Texas]. Finally, the fact that Jensen & Reynolds mailed a payment check to C & H in Texas can hardly be termed significant in terms of a purposeful availment of the benefits of the forum state. In *Hydrokinetics,* 700 F.2d at 1029, this Court did not "weigh heavily" the fact that the defendant might have mailed a check to the forum state in payment for the goods received. The significant factor here, as in *Hydrokinetics,* is that only a single, isolated transaction[9]—Jensen & Reynolds' sole contact with the forum state—was involved. In sum, the totality of Jensen & Reynolds' contacts with Texas do not support an inference of purposeful availment. The mere use of interstate commerce on a single occasion involving the forum, the fortuitous routing of equipment through the forum on the way to its destination in Washington, and the mailing of a payment check to the forum do not constitute the minimum contacts necessary to constitutionally exercise jurisdiction over Jensen & Reynolds. The judgment of the district court is affirmed.

AFFIRMED.

nonresident defendant's presence in the forum through numerous contacts is of such a nature, as in this case, so as to satisfy the demands of the ultimate test of due process. Accordingly through the statutory authority of Art. 2031b Tex.Rev.Civ.Stat.Ann. there remains the single inquiry: is the exercise of jurisdiction consistent with the requirements of due process of law under the United States Constitution?

*Hall,* 638 S.W.2d at 872. [Certiorari was granted in *Hall* on questions involving the constitutionality of exercising jurisdiction over the defendant in that case given the extent of its contacts with Texas and the fact that plaintiff's

cause of action did not arise from these contacts. 51 U.S.L.W. 3636 (U.S. March 1, 1983) (No. 82–1127). Even if the Supreme Court's decision in *Hall* were to institute a constitutional nexus requirement in cases where the defendant's contacts with the forum are not substantial, the decision would not affect the result in the instant case.]

9. The record does not reveal that Jensen & Reynolds had other contacts with Texas, nor does plaintiff contend that Jensen & Reynolds regularly seeks the services of Texas residents.