**RIVIERA OPERATING CORPO-RATION d/b/a Riviera Hotel and Casino, Appellant,**

v.

**Mary Jane DAWSON, Appellee.**

**No. 09–00–052 CV.**

Court of Appeals of Texas, Beaumont.

Submitted Sept. 14, 2000.

Decided Nov. 2, 2000.

---

Greg C. Wilkins, Orgain, Bell & Tucker, L.L.P., Beaumont, for appellant.

John Werner, Cris E. Quinn, Reaud, Morgan & Quinn, Inc., Beaumont, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

BURGESS, Justice.

Riviera Operating Corporation, doing business as Rivera Hotel & Casino, ("Riveira") appeals the trial court's denial of its special appearance motion filed in a lawsuit brought by Mary Jane Dawson ("Dawson") in Jefferson County, Texas. Dawson alleged she was injured in a slip and fall accident occurring at Riviera's hotel in Las Vegas, Nevada. After Dawson conducted special appearance discovery, the trial court heard and denied Reviera's motion.

Upon Riviera's request, the trial court filed the following findings of fact and conclusions of law:

### Findings of Fact

Under traditional jurisdictional analysis, the defendant's contacts with the State of Texas were not sufficiently systematic or of such a nature as to vest this Court with general jurisdiction.

The defendant did, however, transact business over the internet in such a

manner as to create jurisdiction in accordance with the authorities cited by plaintiff in [her] responses to defendant['s] Special Appearance.

### Conclusions of Law

By virtue of the defendant's internet commercial transactions with the State of Texas, defendant has subjected itself to personal jurisdiction within the State of Texas.

Contending generally it is not subject to personal jurisdiction in Texas and that the trial court erred in denying its special appearance motion, Riviera brings three specific issues:

Issue No. 1: The evidence was insufficient to support the trial court's finding of fact that Riviera has "transact[ed] business over the internet" with a resident or residents of Texas.

Issue No. 2: The trial court erred in its conclusion of law that "[b]y virtue of the defendant's internet commercial transactions with the State of Texas, defendant has subjected itself to personal jurisdiction within the State of Texas."

Issue No. 3: The trial court erred in denying Riviera's special appearance motion because Riviera does not have the necessary "minimum contacts" with the State of Texas and the exercise of jurisdiction over Riviera does not comport with "traditional notions of fair play and substantial justice."

This interlocutory appeal involves the impact of internet transactions on jurisdictional analysis, and, as such, is a case of first impression for this Court.

### Standard of Review

■■■ Whether personal jurisdiction exists is a question of law. However, proper exercise of that jurisdiction may require the resolution of underlying factual disputes. *See Conner v. ContiCarriers and Terminals, Inc.*, 944 S.W.2d 405, 411 (Tex.

App.—Houston [14th Dist.] 1997, no writ). We review a trial court's resolution of those facts by a factual sufficiency standard. *See General Elec. Co. v. California Ins. Guar. Ass'n*, 997 S.W.2d 923, 925 (Tex.App.—Beaumont 1999, pet. denied); *Conner*, 944 S.W.2d at 411; *Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 632 (Tex.App.—Dallas 1993, writ denied). If the trial court's order is based on undisputed or otherwise established facts, we conduct a de novo review of the order granting special appearance. *See General Elec.*, 997 S.W.2d at 925; *Conner*, 944 S.W.2d at 411. A defendant who challenges a court's exercise of personal jurisdiction through a special appearance carries the burden of negating all bases of personal jurisdiction. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex.1996). Once the defendant has produced credible evidence negating all bases of jurisdiction, the plaintiff bears the ultimate burden to establish that the Texas court has personal jurisdiction over the defendant as a matter of law. *M.G.M. Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403, 408 (Tex.App.—Corpus Christi 1999, no pet.).

### Personal Jurisdiction

■■■ The exercise of jurisdiction over a nonresident defendant must comply with both (1) the Texas long-arm statute [1], and (2) state and federal constitutional due process guarantees. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990). Because the broad language of Texas's long-arm statute allows the statute to reach as far as the federal constitution permits, our decision in this case turns on a due process analysis. *See Schlobohm*, 784 S.W.2d at 357. This due process inquiry is two-fold: (1) the defendant must have purposely established minimum contacts with the forum state; and (2) the exercise of jurisdiction must comport with "fair play and substan-

---

1. TEX.CIV.PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997).

tial justice." *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528, 543 (1985).

## Minimum Contacts

 In deciding whether Riviera established minimum contacts with Texas, we examine its intentional activities and expectations. To establish minimum contacts with the forum state, Riviera must have purposefully availed itself of the privilege of conducting activities within the forum state, thus enjoying the benefits and protections of its laws. *See id.* at 474–75, 105 S.Ct. at 2183, 85 L.Ed.2d at 541–42. Riviera's activities must justify a conclusion that it reasonably anticipated being called into a Texas court. *See id.* at 474, 105 S.Ct. at 2183, 85 L.Ed.2d at 542; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980).

 The focus of the minimum contacts analysis differs between the two categories of personal jurisdiction—general and specific. *See Schlobohm,* 784 S.W.2d at 357. Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 411 (1984). General jurisdiction exists when a nonresident defendant engages in continuous and systematic contacts with the forum state. *Guardian Royal Exch.,* 815 S.W.2d at 230. The events giving rise to the cause of action need not have occurred in the forum state. *See CSR Ltd. v. Link,* 925 S.W.2d at 594–95. However, the minimum contacts analysis for general jurisdiction is more demanding than that for specific jurisdiction and requires a showing of substantial activities within the forum state. *Schlobohm,* 784 S.W.2d at 357. As Dawson does not contend that specific jurisdiction exists, we turn to the question of whether general jurisdiction has been established.

## Riviera's Evidence

 In support of its special appearance motion, Riviera submitted the affidavit of Duane Krohn, Secretary and Treasurer of Riviera, to establish the following facts:

(1) Riviera, a Nevada corporation with its principal place of business in Las Vegas, Nevada, does not maintain a place of business in Texas; does not do business in Texas; is not a Texas resident; and has never been actively involved in a Texas business.

(2) Riviera is not registered with the Secretary of State to do business in Texas and is not required to maintain and does not maintain a registered agent for service in Texas.

(3) Riviera has never paid nor been required to pay taxes in Texas; has no bank accounts in Texas; has never owned or leased property located in Texas; and never had any employees in Texas.

(4) Riviera has not done business and was not engaged in doing business in Texas regarding the claims and causes of action asserted by Dawson.

Riviera further maintains it was not foreseeable that providing lodging and services to Dawson in Nevada would give rise to a personal injury suit filed against Riviera in Texas, and that it would be excessively burdensome for Riviera to litigate Dawson's claim in Texas. Riviera has demonstrated that it had no systematic and continuous contacts with Texas, that it did not purposefully direct any act toward Texas, and that it took no act within Texas that gave rise to the plaintiff's cause of action.

Based on Riviera's evidence, we conclude that Riviera has carried its burden to negate all bases of personal jurisdiction. *See CSR Ltd. v. Link,* 925 S.W.2d at 596.

## Riviera's Contacts With Texas

 In opposition to Riviera's special appearance, Dawson presented evidence of

Riviera's contacts with Texas. Texas residents accounted for 44,936 room nights in 1997 and 45,267 room nights in 1998. These nights do not include the number of Texas residents who gambled in Riviera's casinos or attended shows there. Further, a newsletter was sent to a total of 161,932 addresses, of which 15,174 were Texas addresses. New Year's Eve invitations issued to 3,597 persons; 270 of these went to Texas addresses. Thirty-two of the Texas addresses were on Riviera's "A" list; sixty were on the "B" list, and 178 were on the "C" list.[2] Riviera's convention information (organized by geographic regions) includes 512 contact names in the southwest region of which Texas and fourteen other states are a part. Of these, 183 are located in Texas.

Dawson also offered the depositions of two Riviera employees, chief financial officer Duane Krohn and Christine Gigante, vice president of gaming marketing. Much of Krohn's testimony was devoted to a hypothetical situation of how Riviera might establish a line of credit for a Texas customer and how Riviera might attempt to collect a debt from a Texas customer. Krohn also testified about two specific instances of Riviera's executives traveling to Texas for business reasons. In 1997, Krohn and others went to San Antonio, as well as non-Texas cities, to promote a public bond offering. In addition, Riviera's board chairman and two vice presidents joined executives from other Las Vegas hotels in meeting with Southwest Airlines executives in an effort "to convince Southwest to put some of the new airplanes they were buying in to service in Las Vegas."

Gigante testified that customers who were fully "comped" (receiving complementary rooms, food, and beverages) would receive invitations approximately once a month to some special event or show at the Riviera. She also testified that customers nationwide, not excluding Texas, received the Riviera newsletter, and, if on the "A" list would receive tele-marketing calls for special events such as New Year's Eve. In addition, she confirmed that customers, not excluding Texans, could make room reservations with the Riviera at its internet website, but could not obtain a line of credit there. Dawson also presents seven computer generated pages pertaining to Riviera's website. Riviera conceded it maintains an internet website accessible to anyone with internet access.

The trial court first found that "[u]nder traditional jurisdictional analysis, [Riviera's] contacts with the State of Texas were not sufficiently systematic or of such a nature as to vest this Court with general jurisdiction." The trial court obviously refers here to the "non-internet" contacts Riviera had with Texas since its next finding states "[t]he defendant did, however, transact business over the internet in such a manner as to create jurisdiction in accordance with the authorities cited by [Dawson's] responses to [Riviera's] Special Appearance." We agree with the trial court that the non-internet transactions are insufficient to establish general jurisdiction over Riviera, an out of state resort. *See Gardemal v. Westin Hotel Company,* 186 F.3d 588, 596 (5th Cir.1999)(no basis for exercising general jurisdiction existed where there was no evidence regarding how frequently hotel advertised in Texas or how much business was generated by advertising nor amount of business generated for hotels by Texas tourist companies); *see also M.G.M. Grand Hotel, Inc. v. Castro,* 8 S.W.3d at 410–11 (no basis for exercising general jurisdiction existed where there existed no evidence that MGM did anything more than solicit business and advertise in Texas, and there was no evidence of "extensive marketing campaign" directed at Texas residents; no showing that MGM relied significantly on Texas for revenues or maintained any Texas agent or representative). However, we further find that Riviera's internet transactions, whether standing by themselves or

2. Riviera uses the "A," "B," and "C" designa- tions to indicate a gambler's level of play.

combined with the non-internet contacts, do not establish general jurisdiction.

### Internet Transactions

As the San Antonio court explained, "[t]he Internet is a global communications network that makes it possible to conduct business throughout the world entirely from a desktop." *Jones v. Beech Aircraft Corp.*, 995 S.W.2d 767, 772 (Tex. App.—San Antonio 1999, pet. dism'd w.o.j., mand. denied). For a Texas jurisdictional analysis, we categorize internet usage on a "spectrum" or "sliding scale." *See Mink v. AAAA Development LLC*, 190 F.3d 333 (5th Cir.1999); *Jones*, 995 S.W.2d at 772.

At one end of the scale are situations in which a defendant clearly does business over the Internet by entering into contracts with residents of other states that involve the knowing and repeated transmission of computer files over the Internet. At the other end of the scale are passive web site situations. A passive web site, which solely makes information available to interested parties, is not grounds for personal jurisdiction.... In the middle are "interactive" web sites, which permit a user to exchange information with the host computer (the person or company maintaining the web site). In these cases, the exercise of jurisdiction is determined by examining the level of interactivity between the parties on the web site.

*Jones*, 995 S.W.2d at 772–73 (citations omitted).

Dawson provides no evidence that Riviera engaged in business transactions or entered into contracts over the internet with Texas residents, and we have found none. Moreover, Dawson's reliance on two federal district court cases is misplaced. In *Park Inns Int'l v. Pacific Plaza Hotels, Inc.*, 5 F.Supp.2d 762, 764 (D.Ariz.1998), there was evidence that, unlike here, the foreign defendant actually had engaged in internet transactions with residents of the forum state. While the second case, *Mieczkowski v. Masco Corp.*, 997 F.Supp. 782 (E.D.Tex.1998), has jurisdictional facts and internet activity similar to this case, *Masco* is a pre-*Mink* decision. There, the Fifth Circuit explained the standard clearly: "Absent a defendant doing business over the Internet or sufficient interactivity with residents of the forum state, we cannot conclude that personal jurisdiction is appropriate." *Mink*, 190 F.3d at 337.

Thus, as Riviera's non-internet contacts are insufficient to establish general jurisdiction as discussed above, and as there is no evidence that Riviera did business over the internet with Texas residents, Dawson has not satisfied the minimum contacts requirement of the due process inquiry. Consequently, personal jurisdiction over Riviera is not proper.

We sustain issues one and two. We further sustain issue three regarding the error of the trial court in not finding minimum contacts to be lacking. Because Mary Jane Dawson has not satisfied the minimum contacts requirement, we need not consider the balance of issue three regarding whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." Accordingly, we overrule the trial court's finding of personal jurisdiction over Riviera Operating Corporation and reverse its denial of special appearance. We therefore dismiss this case for lack of personal jurisdiction over Riviera Operating Corporation.