In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-533 CV


____________________



EIFS INDUSTRY MEMBERS ASSOCIATION, Appellant



V.



LARRY and ALDA BRUNSON, ETAL


and LIFE FORMS HOMES, INC., Appellees






On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 00-09-05961-CV






O P I N I O N


 EIFS Industry Members Association (EIMA) brings an interlocutory appeal of an
order denying its motion for special appearance. Larry and Alda Brunson, et al.,
(plaintiffs), as well as Life Forms, Incorporated, third-party plaintiff below (collectively
appellees) sued EIMA and others (1) based on the alleged failure of the exterior insulation and
finish system (EIFS) on plaintiffs' homes. EIMA claims the trial court erred in denying
its special appearance.

EIMA'S EVIDENCE


 In support of its motion, EIMA presented the affidavit of Stephan Klamke, EIMA's
executive director, attesting that EIMA:

1. Is a non-profit trade association serving the Exterior Insulation Finish Systems
(EIFS) industry. Members include manufacturers, distributors, suppliers, applicators, and
others involved in the industry, and income is derived solely from members dues;

2. Does not manufacture, market, advertise or sell any products;

3. Maintains a single principal place of business with four employees in Morrow,
Georgia;

4. Has never maintained any place of business in the State of Texas;

5. Conducts no business in the State of Texas;

6. Does not solicit business, sell or advertise any products to any customers in the
State of Texas;

7. Has no telephone directory listings or commercial listings in the State of Texas;

8. Does not own, lease or have any interest in any property in the State of Texas;

9. Has no bank accounts, personal property or other assets in the State of Texas;

10. Has no employees who are residents of the State of Texas;

11. Has never registered to do business in the State of Texas and has no registered agent
for service of process in the State of Texas;

12. Has no contracts with any Texas residents (except its attorneys retained for defense
of plaintiffs' claims);

13. Has never sued anyone or otherwise utilized the court system of the State of Texas;

14. Has held no meetings or conferences in the State of Texas from April 1997 to July
2001;

15. Has never advertised in any Texas publication and does not advertise any of the
products or components of the residences that are the subject of the suit;

16. Maintains an Internet website for general industry information since October 1996;

17. Has never had any contacts or dealings with any of the plaintiffs in this matter;

18. Has not furnished any information, products, documents, or materials to any of the
plaintiffs in this matter or for the construction of the residences that are the subject
of this suit; and

19. Has never been involved in the construction, maintenance, inspection or renovation
of the plaintiffs' residences in any way.

 Appellees attack EIMA's evidence on the grounds that Klamke's affidavit does not
address the time period from 1990 to 1997 when their homes were built. We examine the
record for evidence of EIMA's activities in 2001, when appellees brought EIMA into the
suit, and for a reasonable period before that time. See Daimler-Benz Aktiengesellschaft v.
Olson, 21 S.W.3d 707, 717 (Tex. App.--Austin 2000, writ dism'd w.o.j.). Appellees
provide no authority for their contention that we concern ourselves only with the time
frame from 1990 to 1997. See Tex. R. App. P. 38.1(h). Klamke's affidavit provides it
is made "based upon my personal knowledge and my review of records maintained in the
ordinary course of business by [EIMA]." In his deposition, Klamke clarifies that his
knowledge is of EIMA since April of 1997. This is a full four years prior to EIMA being
brought into the suit. Appellees make no argument that four years is not a reasonable
period and while they speculate that EIMA's activities prior to 1997 could have been
radically different, there is simply nothing in the record to support such a conjecture. 
Accordingly, we find Klamke's affidavit is not defective. 

EIMA'S CONTACTS WITH TEXAS


 Appellees point to the following as evidence contravening some of the assertions in
Klamke's affidavit:

 
EIMA enters into membership contracts with its Texas members who receive
publications, newsletters and technical information, are allowed to use the EIMA
logo in advertising, and who pay dues each year; 
 Dues are in the form of either a flat fee or, in the case of associates and
manufacturers, a percentage of their sales - there are Texas members in both
categories; 
 EIMA has the authority to suspend or terminate its Texas members; 
 EIMA has agreed to indemnify EIMA directors, including Mike Boyd, a Texas
resident; 
 EIMA promotes the EIFS industry nationwide, including Texas; 
 EIMA interfaces and participates in various national code organizations, three of
which are used in some form or fashion in Texas (SBCCI, ICBO, and BOCA); 
 EIMA newsletters show specific marketing contacts with the state of Texas - 
 
 A billboard advertising campaign in Dallas (2);
 EIMA's newsletter, The Messenger, dated August 1999 states: 
 


 A subcommittee . . . has been formed to meet with 10
contractor organizations over the next 45 days to present the
membership proposal. Target groups include . . . the Texas
Lathing & Plastering Contractors Association; . . . .


 
 A status report on EIMA public relations efforts in North Carolina states
"provided liaison with non-North Carolina media, including . . . Texas
Builder . . .." 
 
 EIMA's website lists Texas distributors and contractors and its affiliate members; 
 EIMA has a 1-800 phone number to call for a free copy of EIMA publications; 
 EIMA gave an award to Finestone for an EIFS project in Richardson, Texas and
publicized it in the EIMA newsletter, which was sent to Texas members; 
 An EIMA newsletter, prior to February 4, 1997, featured an EIFS application in
Stafford, Texas, done by Corev (3), a Texas manufacturer of EIFS and formerly a
member of EIMA; 
  Corev received EIMA's "Guideline Specifications for Exterior Insulation Finish
Systems Class PB"; 
 EIMA's newsletter, The Messenger, dated December 1998, lists "Upcoming
Meetings Involving Technical Committee" as "Building Professional Institute,
University of Texas, Arlington, TX Jan. 11-15[;] NAHB Convention, Dallas, TX,
Jan. 15-18;" 
 EIMA attended the Houston NAHB (4) Convention in January of 1996; 
 A research study was conducted by EIMA in 1994 via telephone (5) interviews of
architects, builders and EIFS applicators in five cities, including Dallas, Texas; 
 Klamke has been to Texas as a result of his job as executive director of EIMA to
attend the NAHB show and a CSI show to solicit membership, and to make a
membership call on a testing laboratory in Dallas; EIMA expense records show
Klamke's presence in Texas on six occasions, and Tom Wolfe's presence on four. 


STANDARD OF REVIEW


 Appellees have the burden to plead a prima facie showing of jurisdiction. See
Riviera Operating Corp. v. Dawson, 29 S.W.3d 905, 908 (Tex. App.--Beaumont 2000,
no pet.). EIMA bears the burden of negating all bases of personal jurisdiction to sustain
a special appearance. Id. Once EIMA produced credible evidence negating all bases of
jurisdiction, it became appellees' burden to establish the Texas court has personal
jurisdiction over EIMA as a matter of law. Id. 

 The existence of personal jurisdiction is a question of law. Id. Exercise of that
jurisdiction may require a resolution of underlying factual disputes; such a resolution is
reviewed under a factual sufficiency standard. Id. If the trial court's order is based on
undisputed or otherwise established facts, our review is de novo. Id. 

 Minimum contacts exist when the non-resident defendant's contacts with the forum
state give rise to either specific or general jurisdiction. See General Refractories Co. v.
Martin, 8 S.W.3d 818, 821 (Tex. App.--Beaumont 2000, pet. denied). "For a trial court
to have specific jurisdiction over a defendant, the cause of action must arise out of or relate
to the defendant's contact with the forum state." National Indus. Sand Ass'n v. Gibson,
897 S.W.2d 769, 772 (Tex. 1995). Single or even occasional acts will not support specific
jurisdiction if the nature, quality, and circumstances of their commission create only an
attenuated affiliation with Texas. See M.G.M. Grand Hotel v. Castro, 8 S.W.3d 403, 409
(Tex. App.--Corpus Christi 1999, no pet.). "On the other hand, so long as the defendant
has had continuous and systematic contacts with the forum state, a trial court has general
jurisdiction even if the cause of action did not arise from the defendant's purposeful
conduct in the state." See National Indus. Sand Ass'n, 897 S.W.2d at 772. General
jurisdiction is based upon the concept that by invoking the benefits and protections of a
forum's laws, a nonresident defendant consents to suit in that forum. See American Type
Culture Collection, Inc. v. Coleman, No. 00-0959, slip op. at 4, 2002 WL 1433719, at *5
(Tex. July 3, 2002). Thus general jurisdiction requires a showing that the defendant
conducted substantial activities within the forum, a more demanding minimum contacts
analysis than that required for exercise of specific jurisdiction. See CSR Ltd. v. Link, 925
S.W.2d 591, 595 (Tex. 1996).

 The record establishes EIMA's contacts in Texas are with its Texas members and
those in the EIFS industry in Texas that EIMA wishes to recruit as members. The record
does not establish how many of EIMA's members are from Texas or what percentage of
the dues collected by EIMA are generated either by its Texas members or sales in Texas. 
 Appellees have not brought forth any evidence that either they, or any of the other
defendants, were aware of EIMA's marketing efforts or relied upon EIMA's information
in deciding to purchase EIFS. The only evidence of public advertising in Texas is the
billboard campaign in Dallas 1998. There is only evidence of one of EIMA's guideline
specifications being sent to Texas. There is evidence of two awards being given to Texas
members. There is evidence of EIMA attending as many as five meetings or shows in
Texas and making one membership call to Texas. The site of the NAHB conventions and
CSI shows are not determined by EIMA. A national survey by EIMA in 1994 included
Dallas, Texas. EIMA maintains a toll-free number for members to request publications
but the record contains no evidence of any Texas residents using that number; in the record
the number appears in EIMA newsletters sent to its members. EIMA maintains a website
listing Texas members but the record does not reflect whether the site generated any
contacts to those members or whether anyone from Texas has ever logged on to the site.

 Appellees also rely on the evidence of EIMA's involvement in developing technical
standards, performance guidelines, specifications, and training for application of EIFS. 
With the one exception noted above, there is no evidence of this involvement ever
impacting Texas. EIMA's participation in national code organizations which
presumptively have an impact in Texas is not shown to be connected to the case at bar as
there are no allegations that any of the defendants failed to comport with those codes.

 There is no showing that the cause of action arises out of or relates to EIMA's
contacts with Texas. Accordingly, we find there is no basis for the exercise of specific
jurisdiction over EIMA. There is also no showing of such continuous and systematic
contacts between EIMA and Texas as to equate to a substantial connection which has come
about by an action of EIMA purposefully directed toward Texas. See Michel v. Rocket
Engineering Corp., 45 S.W.3d 658, 672-78 (Tex. App.--Fort Worth 2001, no pet.). 
There is no indication that EIMA has availed itself of any benefits or privileges of Texas
law. See American Type Culture Collection, slip op. at 4, 2002 WL 1433719, at *5.
Consequently, we find there is no basis for the exercise of general jurisdiction over EIMA.

 Therefore, the order of the trial court denying EIMA's special appearance is
reversed and we remand this case with instructions to dismiss the claims against EIMA for
lack of personal jurisdiction.

 REVERSED AND REMANDED.





 DON BURGESS

 Justice


Submitted on March 22, 2002

Opinion Delivered July 11, 2002

Do Not Publish 


Before Walker, C.J., Burgess and Gaultney, JJ.
1. The other defendants are Life Forms, Inc; Finestone; Fresh Coat, Inc.; General
Terrazzo Supplies, Inc.; Premier Plastering Supply, Inc.; Best Masonry & Tool Supply,
Inc.; Charles R. Rutherford d/b/a/ C. R. Plastering and d/b/a C & R Plastering; K2, Inc.
f/k/a Anthony Industries d/b/a Simplex Products Division; and Griesenbeck Architectural
Products, Inc. d/b/a Clyde Griesenbeck & Sons, Inc. All are Texas corporations except
Finestone and Simplex.
2. EIMA's newsletter, The Messenger, dated December 1998 states: 


 APL is developing billboard advertising that will run in Dallas concurrently
with the 1999 NAHB convention. The two week billboard campaign,
culminating with the end of the show on January 18, will focus on EIFS'
superior quality and curb appeal. The ad will appear on 20 billboards in
downtown Dallas and along major highways leading into the city.
3. Corev is not named as a defendant in the case at bar.
4. NAHB is the National Association of Home Builders.
5. EIMA also surveyed whether the EIMA marketing program was reaching these
cities and found "[t]he majority of respondents in all five cities were unaware of any
marketing programs sponsored by EIMA."