NO. 12-01-00214-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


ARCON, INC.,
§
 APPEAL FROM THE 188TH

APPELLANT


V.


§
 JUDICIAL DISTRICT COURT OF

MARY MALONE, INDIVIDUALLY AND


AS REPRESENTATIVE OF THE ESTATE

OF DAVID W. GRIGGS, DECEASED

AND SARTAIN STRUCTURES,

APPELLEES
§
 GREGG COUNTY, TEXAS

 

OPINION ON MOTION FOR REHEARING


 Mary Malone, individually and as representative of the estate of David W. Griggs, Deceased
("Malone) filed a motion for rehearing based on the Texas Supreme Court's opinion in American
Type Culture Collection, Inc. v. Coleman, No. 00-0959, 45 Sup. Ct. J. 1008, 2002 WL 1433719
(Tex. July 3, 2002) and its opinion in BMC Software Belgium, N.V. v. Marchand, No. 00-1019, 45
Sup. Ct. J. 930, 2001 WL 1898473 (Tex. June 27, 2002). Malone's motion for rehearing is denied. 
Our opinion of June 28, 2002 is hereby withdrawn and the following opinion is substituted in its
place.

 Appellant Arcon, Inc. ("Arcon") brings this interlocutory appeal complaining of the trial
court's denial of its special appearance in favor of Appellee Malone. Arcon raises two issues on
appeal. We reverse with instructions that the trial court dismiss Malone's claims against Arcon.


Background

 Arcon hired Sartain Structures ("Sartain") to do construction work on an addition to a box
factory in Oklahoma. The construction project required construction workers to work on a platform
bolting rafters onto columns, which were bolted into a concrete slab. Arcon allegedly installed the
bolts that were supposed to secure the column to the concrete slab. Griggs was standing on the
platform when the bolts securing one of the columns to the concrete slab allegedly failed. The
column and the attached center rafter began to fall. Griggs, apparently under the impression that the
platform was collapsing, grabbed the rafter, but ultimately lost his grip and fell thirty feet to his death
on the concrete slab below. 

 Malone filed the instant lawsuit on November 13, 2000. Arcon filed a special appearance
and, in due order of pleading, answered. In its special appearance, Arcon alleged (1) that it is an
Oklahoma corporation, (2) that it owns no assets in Texas, (3) that it does no advertising in Texas,
(4) that it does not maintain an office in Texas, (5) that it has no bank accounts in Texas, (6) that it
owns no real property in Texas, (7) that it has committed no tort in Texas, (8) that it has no
representatives or agents in Texas, (9) that Griggs was hired in Oklahoma, and (10) that the subject
matter of the suit occurred in Oklahoma and did not arise out of business done in Texas. Malone
responded to Arcon's special appearance and argued that the trial court had general jurisdiction
because Arcon had continuous and systematic contacts with Texas by performing six construction
projects during recent years, including at least one job involving Sartain. Malone also contended that
the trial court had specific jurisdiction pursuant to Texas Civil Practice and Remedies Code §
17.042(3) because Arcon had recruited Texas residents through an intermediary, Sartain. An
evidentiary hearing was conducted and Arcon's special appearance was denied. Arcon requested
findings of facts and conclusions of law, but the trial court made no such findings. Arcon brings this
interlocutory appeal (1) complaining of the trial court's denial of its special appearance. 


Standard of Review

 A nonresident defendant must negate all bases of personal jurisdiction to prevail in a special
appearance. CSR Ltd. v. Link, 925 S.W.2d 591, 596 (Tex. 1996). The question of whether a trial
court can assume personal jurisdiction over a nonresident defendant is a question of law that we
review de novo. See De Prins v. Van Damme, 953 S.W.2d 7, 13 (Tex. App.-Tyler 1997, writ
denied); see also Hotel Partners v. Craig, 993 S.W.2d 116, 120 (Tex. App.-Dallas 1994, writ
denied). We review the trial court's resolution of any underlying factual questions for factual
sufficiency of the evidence and will affirm the trial court's order on any legal theory that finds
support in the evidence. See Guardian Royal Exch. Assurance Ltd. v. English China Clays,
P.L.C., 815 S.W.2d 223, 226 (Tex. 1991). However, when the trial court does not make any findings
of fact or conclusions of law, any questions of fact must be presumed and found in support of the
judgment. See Zac Smith & Co. v. Otis Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987).

 In reviewing the evidence, we consider and weigh all of the evidence, both the evidence that
tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. 
See Ames v. Ames, 776 S.W.2d 154, 158-59 (Tex. 1989). If evidence supports the implied findings
of fact, we will uphold the trial court's judgment on any legal theories supported by the findings. 
See Woford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). Ultimately, we must affirm, unless we
decide, based on all of the evidence in the record and facts presumed resolved in support of the trial
court's ruling, that the appellant negated all bases of personal jurisdiction. See Link, 925 S.W.2d at
596; Guardian Royal, 815 S.W.2d at 226; Otis Elevator Co., 734 S.W.2d at 662, but see Riviera
Operating Corp. v. Dawson, 29 S.W.3d 905, 908 (Tex. App.-Beaumont 2000, no pet.).


Burden of Proof Absent Jurisdictional


Allegations in Plaintiff's Pleadings


 In its first issue, Arcon contends that the trial court erred in overruling Arcon's special
appearance because, due to Malone's failure to make jurisdictional allegations, Arcon met its burden
of proof by establishing that it was a nonresident. Generally, the allegations of the plaintiff's petition
must state facts which affirmatively show the jurisdiction of the court in which the action is brought. 
See Richardson v. First Nat'l Life Ins. Co., 419 S.W.2d 836, 839 (Tex. 1967); Isaacson v.
Anderson, 982 S.W.2d 39, 40-41 (Tex. App.-Houston [1st Dist.] 1998, no pet.). When drafting the
petition to be served on a nonresident defendant, the plaintiff must allege facts that, if true, would
make the nonresident defendant subject to the personal jurisdiction of a Texas court. See Paramount
Pipe & Supply Co. v. Muhr, 749 S.W.2d 491, 496 (Tex. 1988); see, e.g., Biotrace Int'l, Inc. v.
Wilwerding, 937 S.W.2d 146, 147 (Tex. App.-Houston [1st Dist.] 1997, no writ); Guardian Royal
Exch. Assurance, Ltd., 815 S.W.2d at 226. Where a plaintiff's pleadings do not specifically allege
any grounds for personal jurisdiction, a defendant meets its burden of proof by putting on evidence
that it is a nonresident. See Siskind v. Villa Foundation for Education, Inc., 642 S.W.2d 434, 438
n.5 (Tex. 1982); M.G.M. Grand Hotel, Inc. v. Castro, 8 S.W.3d 403, 408 (Tex. App.-Corpus Christi
1999, no pet); Hotel Partners v. KPMG Peat Marwick, 847 S.W.2d 630, 633-34 (Tex. App.-Dallas
1993, writ denied). (2) Here, our review of the record indicates that Arcon has met its burden in this
regard.

 However, a plaintiff's failure to plead facts giving rise to personal jurisdiction is not subject
to attack by the defendant. See Castro, 8 S.W.3d at 408 n.2. If the defendant sustains its burden,
the burden then shifts to the plaintiff to show as a matter of law that the court has jurisdiction over
the defendant. See Riviera Operating Corp. v. Dawson, 29 S.W.3d at 908.

 In the instant case, while Arcon is correct in its statement of the law, the mere fact that it met
its burden of proof by proving that it is a nonresident does not resolve the issue of whether the trial
court erred in overruling its special appearance. Rather, once Arcon proved that it was a nonresident,
the burden of proof shifted to Malone to show that the trial court had personal jurisdiction over
Arcon as a matter of law. See Dawson, 29 S.W.3d at 908. Therefore, to the extent that Arcon's first
issue does not relate to the trial court's order overruling Arcon's special appearance, it is overruled.


Personal Jurisdiction

 A court may assert personal jurisdiction over a nonresident defendant only if the requirements
of both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and
the Texas Long-Arm Statute are satisfied. See U.S. Const. amend. XIV, § 1; Tex. Civ. Prac. &
Rem. Code Ann. § 17.041, et. seq. (Vernon 1997); Hall v. Helicopteros Nacionales de Columbia,
S.A., 638 S.W.2d 870, 872 (Tex. 1982), rev'd on other grounds, 466 U.S. 408, 413-14, 104 S. Ct.
1868, 1871-72, 80 L. Ed. 2d 404 (1984). The Texas Long-Arm Statute has been interpreted to be
co-extensive with the due process limits of the United States Constitution. See Schlobohm v.
Schapiro, 784 S.W.2d 355, 357 (Tex. 1990); Hall, 638 S.W.2d at 872. It follows that if the exercise
of personal jurisdiction satisfies the Due Process Clause of the United States Constitution, then the
Texas Long-Arm Statute is satisfied. See Link, 925 S.W.2d at 594; Guardian Royal, 815 S.W.2d
at 226.

 Under the Due Process Clause, a defendant must have certain minimum contacts with the
forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and
substantial justice.'" See International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154,
158, 90 L. Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L.
Ed. 278 (1940)). A nonresident defendant that has purposefully availed itself of the privileges and
benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to
confer personal jurisdiction. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76, 105 S.
Ct. 2174, 2183-84, 85 L. Ed. 2d 528 (1985). A defendant should not be subject to the jurisdiction
of a foreign court based upon "random," "fortuitous," or "attenuated" contacts. Id. The Texas
Supreme Court has compiled these Federal Due Process requirements into a three-part test to
determine if a trial court has personal jurisdiction over a nonresident defendant: (1) the nonresident
defendant or foreign corporation must purposefully do some act or consummate some transaction
in the forum state; (2) the cause of action must arise from or be connected with such act or
transaction or the defendant's contacts with Texas must be continuing and systematic; and (3) the
assumption of jurisdiction by the forum state must not offend traditional notions of fair play and
substantial justice, consideration being given to the quality, nature, and extent of the activity in the
forum state, the relative convenience of the parties, the benefits and protection of the laws of the
forum state afforded the respective parties, and the basic equities of the situation. See Schlobohm,
784 S.W.2d at 358; O'Brien v. Lanpar Co., 399 S.W.2d 340, 342 (Tex. 1966); see also, CMMC v.
Salinas, 929 S.W.2d 435, 437 (Tex. 1996); Link, 925 S.W.2d at 596; Tex. Civ. Prac. & Rem. Code
Ann. §17.041, et. seq. (Vernon 1997). 

 

General Jurisdiction

 At the oral argument of this cause, Malone conceded that the trial court did not have specific
jurisdiction over Arcon. As such, we consider whether Malone raised evidence in response to
Arcon's special appearance proving that the trial court had general jurisdiction over Arcon as a
matter of law. A trial court can obtain personal jurisdiction over a defendant either by a finding of
specific or general jurisdiction. See Link, 925 S.W.2d at 595. General jurisdiction exists when a
defendant's purposeful contacts are continuous and systematic, permitting the forum to exercise
personal jurisdiction over the defendant even if the cause of action did not arise from or relate to
activities conducted within the forum state. Id. (citing Schlobohm, 784 S.W.2d at 357). General
jurisdiction requires a showing that the defendant conducted substantial activities within the forum,
a more demanding minimum contacts analysis than for specific jurisdiction. See Guardian Royal,
815 S.W.2d at 228. In our analysis, we do not consider the number of the nonresident defendant's
contacts with the forum state, but rather the quality and nature of those contacts. See McDermott
v. Cronin, 31 S.W.3d 617, 621 (Tex. App.-Houston [1st Dist.] 2000, no pet.).

 In the case at hand, Malone attached the deposition transcript of Raymond Carlisle Roberts
("Roberts"), the president of Arcon, as an exhibit to its response to Arcon's special appearance. In
his deposition, Roberts testified that (1) Arcon had done six construction projects in Texas; (2) on
at least one of the Texas construction projects, a local engineer approved the building manufacturer's
plans; and (3) Arcon used local contractors to do plumbing and electrical work on the Texas projects. 
At the hearing on Arcon's special appearance, Roberts testified that Arcon's construction projects
in Texas were limited to Dollar General Stores. (3) He further testified that these six projects took
place during 1998 and 2000, with no jobs occurring in 1999. Moreover, Roberts testified that the
time spent on these projects varied based on the amount of work performed, ranging from two to
eight weeks per project. On cross examination, Roberts testified that inspectors from Texas would
come out to approve the projects and that Arcon had generally availed itself of the building laws of
the State of Texas. Roberts also testified that co-defendant, Sartain, worked for Arcon on one of the
Texas projects.

 Malone has cited no analogous authority, and we are aware of none, in which a court held
that there was general jurisdiction where a company engaged in a series of construction projects in
the forum state during a nonconsecutive two-year period. Arcon draws a comparison between the
United States Supreme Court's holdings in Perkins v. Benguet Consolidated Mining Co., 342 U.S.
437, 72 S. Ct. 413, 96 L. Ed. 485 (1952), in which the Court concluded that there was general
jurisdiction, and Hall, 466 U.S. 408, 104 S. Ct. 1868, in which the Court found that the exercise of
general jurisdiction was improper. Arcon contends that the facts in the instant case are more closely
analogous to Hall. We agree.

 Perkins involved a suit in Ohio against a Philippine Islands corporation on a cause of action
unrelated to the corporation's activities in Ohio. See Perkins, 342 U.S. at 447, 72 S. Ct. at 419. The
corporation did business in the Philippines until the Japanese occupied the islands during World War
II. Id. At that time, the president of the corporation returned to his home in Ohio and carried on
"continuous and systematic supervision of the necessarily limited wartime activities of the
company." Id., 342 U.S. at 448, 72 S. Ct. at 419. Among other things, the corporation's records and
bank accounts were kept and located in Ohio, the directors' meetings were held in Ohio, and all key
business decisions were made in Ohio. Id. The Supreme Court held that the Ohio court's taking 
jurisdiction over the defendant satisfied federal due process standards. Id., 342 U.S. at 448, 72 S.
Ct. at 420. Hall involved the issue of whether a foreign corporation could be sued in a Texas court
on claims arising out of a helicopter crash in Peru. See Hall, 466 U.S. at 409-10, 104 S. Ct. at 1869-70. The parties in Hall made no argument that the claim had any relationship to the defendant's
contact with the State of Texas. Id., 466 U.S. at 415 n.10, 104 S. Ct. at 1872 n.10. The Court
examined the defendant's contacts with Texas in order to determine whether they constituted "the
kind of continuous and systematic general business contacts the court found to exist in Perkins," and
concluding that they did not, noted:


 It is undisputed that Helicol does not have a place of business in Texas and never has been licensed
to do business in the State. Basically, Helicol's contacts with Texas consisted of sending its chief
executive officer to Houston for a contract negotiation session; accepting into its New York bank
account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services
from Bell Helicopter for substantial sums; and sending personnel to Bell's facilities in Fort Worth for
training.


Hall, 466 U.S. at 416, 104 S. Ct. 1873.

 In the present case, Arcon proved that it is an Oklahoma corporation, that it owns no assets
in Texas, that it does no advertising in Texas, that it does not maintain any office in Texas, that it
has no bank accounts in Texas, that it owns no real property in Texas, that it has committed no tort
in Texas, that it has no representatives or agents in Texas, and that the subject matter of the suit
occurred in Oklahoma and did not arise out of business done in Texas. The only evidence involving
Texas contacts is that Arcon engaged in six construction projects of varying lengths during the years
1998 and 2000, that Arcon engaged the services of Texas subcontractors related to the electrical and
plumbing portions of the six Texas projects, that on at least one of the Texas construction projects,
a local engineer approved the building manufacturer's plans, that a Texas inspector approved the
projects, and that Arcon had generally availed itself of the laws of the State of Texas related to its
construction projects. 

 On the other hand, the evidence also reflects that Arcon engaged in no activities during 1999. 
The evidence does not indicate that Arcon's contacts were systematic and continuous. It is
undisputed that Arcon had no contact at all with Texas during 1999. Moreover, based on the limited
amount of detail in the record, it appears that the type of work involved in each Texas project and
the time required to complete the same varied from one project to the next. The record reflects that
on at least one job, Arcon merely painted a pre-existing structure, as opposed to the dirt and concrete
work it performed on other projects in Texas during the time period in question.

 We stress that, in our analysis, we do not consider the number of the nonresident defendant's
contacts with the forum state, but rather the quality and nature of those contacts. See McDermott,
31 S.W.3d at 621. Considering the quality and nature of the contacts at issue, we conclude that the
instant case is more analogous to Helicopteros than to Perkins; see also American Type Culture
Collection, Inc. v. Coleman, No. 00-0959, 45 S. Ct. J. 1008, 2002 WL 1433719, at *6 (Tex. July
3, 2002). Thus, we conclude that Malone failed to satisfy her burden by proving as a matter of law
that the trial court had jurisdiction over Arcon. Arcon's second issue is sustained.

 Accordingly, the trial court's order overruling Arcon's special appearance is reversed with
instructions that the trial court dismiss Malone's claims against Arcon for lack of personal
jurisdiction.


 JIM WORTHEN 

 Justice



Opinion delivered October 23, 2002.

Panel consisted of Worthen, J., and Griffith, J.

Gohmert, Jr., C.J., not participating




































(DO NOT PUBLISH)
1. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon Supp. 2002).
2. Malone attempts to distinguish Siskind because the plaintiff in that case did not file a response to the defendant's
special appearance. We interpret Arcon's argument to be that, absent allegations of personal jurisdiction in
Malone's petition, Arcon satisfied its burden by presenting evidence that it was a nonresident, and therefore, the trial
court should have granted its special appearance. We do not agree with Arcon that its evidence of nonresidency is
dispositive of the jurisdictional issue. We rely on Siskind in conjunction with the rule in Castro and Dawson as
those cases relate to the shifting the burden of proof in such circumstances. Malone has made no argument relating
to the shift in the burden of proof.
3. Additionally, Roberts testified that in one of the Dollar General Stores, there was also located the American
Counsel of the Blind.