In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-387 CV


____________________



DOUBLE EAGLE RESORTS, INC. 


d/b/a DOUBLE EAGLE HOTEL AND CASINO, Appellant



V.



DENNIS R. MOTT, ET UX, Appellees






On Appeal from the 1st District Court


Jasper County, Texas


Trial Cause No. 26597






 OPINION 


 This appeal addresses whether the trial court can exercise jurisdiction over a lawsuit
arising from a personal injury that occurred in Colorado. The premises owner, Double Eagle
Resorts, Inc. d/b/a Double Eagle Hotel & Casino, is a Colorado corporation with its principal
place of business in Cripple Creek, Colorado. Double Eagle filed a special appearance to
challenge the trial court's jurisdiction. On August 29, 2006, the trial court denied it. 
Subsequently, Double Eagle filed an accelerated interlocutory appeal and asserts the trial
court erred in denying its jurisdictional challenge because Double Eagle's contacts with
Texas are insufficient for Texas courts to exercise jurisdiction over it. See Tex. Civ. Prac.
& Rem. Code Ann. § 51.014(a)(7) (Vernon Supp. 2006); Tex. R. App. P. 28.1. We reverse
and render judgment dismissing the claims against Double Eagle for want of jurisdiction.

Background

 On September 15, 2003, Dennis Mott fell when a stool on which he was seated 
collapsed at Double Eagle's premises in Colorado. On June 17, 2005, the Motts filed suit
against Double Eagle in Jasper County, Texas. Dennis alleged that he received severe and
disabling injuries by virtue of Double Eagle's negligence in failing to warn him about the
stool or to make it reasonably safe. Mary, Dennis's wife, sued Double Eagle for loss of
consortium. At all material times, the Motts were Texas citizens. 

On appeal, the Motts assert that the trial court properly considered Double Eagle's
contacts that occurred with Texas after the date of Dennis's injury in deciding to exercise
jurisdiction over their personal injury lawsuit. The Motts further contend that Double
Eagle's operation of an interactive website, which commenced subsequent to Dennis's injury,
is sufficient to support the trial court's exercise of jurisdiction over their suit. Moreover, the
Motts assert that their claims arise out of Double Eagle's conduct in Texas. Further, they
contend that the trial court correctly concluded it could exercise jurisdiction over Double
Eagle because Double Eagle targeted its marketing materials at the Motts by sending them
mail that solicited their return to the casino and offered them "a free room and gambling
money." Finally, the Motts assert that under a specific jurisdiction analysis, the trial court
correctly concluded it could exercise jurisdiction over their personal injury lawsuit even
though Dennis's injury occurred in Colorado.

In contrast, Double Eagle contends that its interactive website did not exist at the time
of Dennis's fall, and argues that in deciding the jurisdictional issue the trial court should not
have considered its interactive website. Double Eagle further contends that its mailing of
marketing materials to the Motts does not supply the requisite minimum contacts to support
the trial court's exercise of jurisdiction over the Motts' negligence claims. Double Eagle
requests that we dismiss the Motts' claims for want of personal jurisdiction. 

Standard of Review


The Motts bear the initial burden of pleading sufficient allegations to bring Double
Eagle, a nonresident defendant, within the provisions of the long-arm statute. See BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002). "A defendant
challenging a Texas court's personal jurisdiction over it must negate all jurisdictional bases." 
Id. 

Whether a court has personal jurisdiction over a defendant is a question of law. Am.
Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 805-06 (Tex. 2002). In 
jurisdictional disputes in which the trial court resolves questions of fact, we review factual
findings for legal and factual sufficiency, and we review legal conclusions de novo. BMC
Software, 83 S.W.3d at 794. We will affirm the trial court=s judgment on any legal theory
that finds support in the evidence. See id. (stating that if trial court's conclusion of law is
incorrect, but it rendered a proper judgment, its erroneous legal conclusion does not require
reversal). If the trial court declines to issue specific findings of fact, as occurred here, then
all facts necessary to support the trial court's ruling are implied as long as there is evidence
in the record to support them. Id. at 795. However, the trial court's implied findings are not
conclusive, and when the record on appeal contains a reporter's record and clerk's record,
the appellant may use the evidence in the record to challenge the legal and factual sufficiency
of the evidence supporting any of the trial court's implied findings. Id. In this case, we have
the benefit of both the reporter's and clerk's records. 

Personal Jurisdiction

A court may exercise personal jurisdiction over a nonresident defendant if the
nonresident's minimum contacts with the forum state give rise to either specific jurisdiction
or general jurisdiction. Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466
U.S. 408, 413-14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). A court's exercise of personal
jurisdiction over nonresident defendants is constitutional when two conditions are met: (1)
the defendant has established minimum contacts with the forum state, and (2) the exercise
of jurisdiction comports with traditional notions of fair play and substantial justice. Int'l
Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); BMC
Software, 83 S.W.3d at 795. Because the Texas long-arm statute extends as far as federal
due process permits, the long-arm statute's requirements are satisfied if the exercise of
personal jurisdiction comports with federal due process limitations. Guardian Royal Exch.
Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991). 

In this case, the special appearance evidence consists of Dennis's affidavit, copies of
ten pages from Double Eagle's website, excerpts from Dennis's deposition, copies of Double
Eagle's Answers to Plaintiffs' Second Interrogatories, and the affidavit of Double Eagle's
president, Michael Smith. We review the record below to evaluate whether it supports the
trial court's decision to exercise jurisdiction over a lawsuit regarding a personal injury claim
that arose in Colorado. 

Specific Jurisdiction Analysis

The Motts contend that Texas courts have specific jurisdiction over their claims
against Double Eagle by virtue of Double Eagle's direct marketing to them. "[W]hen a State
exercises personal jurisdiction over a defendant in a suit arising out of or related to the
defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the
defendant." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8, 104
S.Ct. 1868, 80 L.Ed.2d 404 (1984). "[T]he touchstone of jurisdictional due process has been
'purposeful availment.'" Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 784
(Tex. 2005). 

In addition to the requirement that the nonresident's activities are purposefully
directed at the forum, "the litigation must result from alleged injuries that 'arise out of or
relate to' those activities." Guardian Royal Exch., 815 S.W.2d at 228 (citing Burger King
Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985); Zac
Smith & Co., Inc. v. Otis Elevator Co., 734 S.W.2d 662, 663 (Tex. 1987)). Thus, establishing
jurisdiction under a specific jurisdiction analysis also depends on whether the defendant's
forum contacts actually gave "rise to the liabilities sued on[.]" Int'l Shoe, 326 U.S. at 317. 
"[I]t has been generally recognized that the casual presence of the corporate agent or even
his conduct of single or isolated items of activities in a state in the corporation's behalf are
not enough to subject it to suit on causes of action unconnected with the activities there." 
Id. "Whether due process is satisfied must depend rather upon the quality and nature of the
activity in relation to the fair and orderly administration of the laws which it was the purpose
of the due process clause to insure." Id. at 319. 

Thus, within the context of the Motts' negligence claim, we evaluate whether the
Motts' claim arises from Double Eagle's purposefully mailing advertising to them. The
Motts allege that Double Eagle is liable to them for its negligence in failing to warn them of
the dangers existing on its premises, and in failing to make the premises safe. With respect
to premises invitees, a premises owner is negligent if the condition of the premises poses an
unreasonable risk of harm, the owner knew or should have known of the danger, and the
premises owner failed to exercise ordinary care to protect its invitee from the danger, by both
failing to adequately warn the invitee of the condition and failing to make the condition
reasonably safe. See Dallas Mkt. Ctr. Dev. Co. v. Liedeker, 958 S.W.2d 382, 385 (Tex.
1997) (per curiam) (quoting State Dep't of Highways & Pub. Transp. v. Payne, 838 S.W.2d
235, 237 (Tex.1992) (op. on reh'g)), overruled in part on other grounds by Torrington Co.
v. Stutzman, 46 S.W.3d 829, 840 n. 9 (Tex. 2000); State v. Williams, 940 S.W.2d 583, 584
(Tex. 1996); Comm. On Pattern Jury Charges, State Bar of Tex., Texas Pattern
Jury Charges, PJC 66.4 (2006). 

Based on the Motts' pleadings and the special appearance evidence, it is apparent that
the Motts' cause of action against Double Eagle concerns Double Eagle's conduct in
Colorado. The activity giving rise to the alleged defective condition of the stool, and Double
Eagle's alleged failure to make the condition safe or to warn about it occurred in Colorado. 
With respect to the evidence introduced at the special appearance hearing, Dennis's affidavit
states he received mailings from Double Eagle both before and after his injury. However,
the trial court's record does not contain the promotional materials received by Dennis. 

Jurisdiction is proper if the cause of action arises from a particular activity in the
forum. See Schlobohm v. Schapiro, 784 S.W.2d 355, 358 (Tex. 1990). We may reverse the
trial court's legal conclusions if they are incorrect. See BMC Software, 83 S.W.3d at 794.

We conclude that Double Eagle's alleged failure to warn and to make its premises safe
occurred in Colorado, not Texas. The pleadings and the special appearance evidence show
that the Motts' claim arises from Double Eagle's activity in Colorado, not from Double
Eagle's activity in Texas. Because the Motts' cause of action did not arise from Double
Eagle's direct mail solicitations, but instead from Double Eagle's alleged negligent omissions
or commissions in Colorado, the trial court erred in concluding that Double Eagle's direct
mail solicitations allowed it to exercise jurisdiction over Double Eagle under the Texas long-arm statute. See Helicopteros, 466 U.S. at 414.

General Jurisdiction Analysis 


The Motts further contend that Double Eagle's operation of an interactive website, 
which allows customers to make online reservations, constitutes sufficient contact to permit
a Texas court to exercise general jurisdiction over any dispute involving Double Eagle. In
contrast, Double Eagle contends that its contacts with Texas residents through its interactive
website are not relevant because its website was not interactive at the time of the accident. 
Double Eagle further contends that regardless of when its website became interactive, its
contacts with Texas are insufficient to support the trial court's exercise of jurisdiction over
a personal injury claim that arose in Colorado. 

With respect to the temporal point after which a nonresident's contacts become
irrelevant for the purpose of a minimum contacts analysis, it appears that the intermediate
appellate courts of Texas are divided. Some cases have stated that only contacts prior to the
time the cause of action arose are relevant to the jurisdictional analysis. Coleman v. Klockner
& Co. AG, 180 S.W.3d 577, 584 (Tex. App.-Houston [14th Dist.] 2005, no pet.); Botter v.
Am. Dental Ass'n, 124 S.W.3d 856, 865 (Tex. App.-Austin 2003, no pet.); MedCost, L.L.C.
v. Loiseau, 166 S.W.3d 421, 434 (Tex. App.-Austin 2005, no pet.); AmQuip Corp. v. Cloud,
73 S.W.3d 380, 388 (Tex. App.-Houston [1st Dist.] 2002, no pet.) (telephone calls made
after the accident were not relevant); Scott v. Huey L. Cheramie, Inc., 833 S.W.2d 240, 242
(Tex. App.-Houston [14th Dist.] 1992, no writ) (contract signed after injury occurred was
not relevant to jurisdiction). Other intermediate appellate courts have considered contacts
of nonresidents subsequent to the date of accident as relevant to their analysis. Equitable
Prod. Co. v. Canales-Trevino, 136 S.W.3d 235, 242-44 (Tex. App.-San Antonio 2004, pet.
denied) (company's relocation of its national headquarters from Texas after personal injury
claim arose was a significant factor to consider in deciding jurisdiction); Nguyen v. Desai,
132 S.W.3d 115, 118 (Tex. App.-Houston [14th Dist.] 2004, no pet.) (nonresident's forum
activities are typically relevant to the court's jurisdictional analysis up until the plaintiff files
suit). 

Professor Charles W. Rhodes makes the persuasive argument that in a general
jurisdiction analysis, the relevant contacts are those that exist at the time of service of
citation:

Appraising the contacts when the cause of action accrued would be
proper if the difference between general and specific jurisdiction was merely
the quantity of contacts, as then general and specific jurisdiction would not be
analytically distinct types of jurisdictional power. But analyzing the contacts
at the time of accrual is not appropriate under the proper explanation of
general jurisdiction as dispute-blind general adjudicative authority. This
authority depends on whether the nonresident is performing similar activities
as a forum citizen when the state asserts its adjudicative authority over the
defendant through service of process. As an example, a nonresident natural
person physically present within the state--who is comparable, in many
respects, to the state's citizens--is amendable to a state's general jurisdiction
if process is served while she is in the state. By serving process on her while
she is present there, acting similarly to the state's citizens, the state subjects
her to its sovereign power for any cause of action. Likewise, if a corporation
is engaging in activities comparable to a local business when the state
exercises judicial power via serving process, the exercise of general
jurisdiction is proper. Therefore, the proper definition of general jurisdiction
demonstrates that it depends on the defendant's contacts at the time of service. 


Charles W. Rhodes, The Predictability Principle in Personal Jurisdiction Doctrine: A Case
Study on the Effects of a "Generally" Too Broad, but "Specifically" Too Narrow Approach
to Minimum Contacts, 57 Baylor L. Rev. 135, 238-39 (2005). 

 We agree that the contacts up until service are relevant to a court's general jurisdiction
inquiry. Because a court's examination of its jurisdiction is focused on whether the
nonresident's contacts are continuous and systematic, the nonresident's activities over a
period of time are relevant in the jurisdictional analysis. In Helicopteros, the Supreme
Court's discussion encompassed the nonresident's contacts over a seven-year period, some
of which occurred after the accident made the subject of the suit. Helicopteros, 466 U.S. at
409-411. In Coleman, the nonresident's contacts included the sales of its products in Texas
for at least eighteen years, the company's percentage of annual sales in Texas at the time the
suit commenced, and the percentage of supplies it purchased from Texas vendors over a
period of approximately five years. See Coleman, 83 S.W.3d at 807-08. 

 The court's power to enter a valid judgment is not determined solely by activities that
occur prior to the accident, but can include the nonresident's activities after the cause of
action arises. For example, if the nonresident became a Texas resident after the injury
occurred, there would be no quarrel that it could be held to answer by a court in the state
where it was incorporated when it was served. The Supreme Court has held that a
nonresident within the forum on the date he is served with process would be subject to the
court's power to enter a valid and binding judgment. Burnham v. Superior Court of Cal.,
495 U.S. 604, 608, 628, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (plurality opinion) (holding
that California had jurisdiction in a divorce case over a New Jersey resident served with a
divorce petition in California while visiting there for business and to see his children). 
Additionally, if a defendant appears generally before making a special appearance, the
defendant's conduct is deemed to subject the defendant to the court's jurisdiction. See
Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 201 (Tex. 1985) (recognizing that rule
120a is a limited exception to the general Texas rule that appearance for any purpose subjects
the defendant to the court's jurisdiction); see also Tex. R. Civ. P. 120a(1); Tex. R. Civ. P.
121. Because a nonresident's contacts with Texas prior to service are generally relevant to
a court's jurisdictional inquiry, we hold the trial court did not err in considering evidence
relevant to the nonresident's contacts that arose after the injury but before the nonresident
was served with citation.

 Although the court did not err in considering Double Eagle's contacts prior to the date 
it was served with the suit, to justify the court's decision to exercise jurisdiction Double
Eagle's contacts must also be continuous and systematic. In evaluating the nature of Double
Eagle's Texas contacts, we note that Double Eagle's website became interactive in June of
2005. Through February 2006, Double Eagle received approximately three hundred online
reservations, of which, only twenty-four were from people listing a Texas address. Thus, on
average, Double Eagle received 2.66 reservations per month from Texas. Based on this
evidence, the trial court could have reasonably concluded that Double Eagle had
approximately ten reservations from Texas residents before the Motts served Double Eagle
with process. 

 In Riviera Operating Corp. v. Dawson, 29 S.W.3d 905, 910-11 (Tex. App.-Beaumont
2000, pet. denied), we held that evidence of approximately 45,000 reservations per year by
Texas residents at a Nevada hotel and casino were, without more, insufficient to permit a
Texas court to exercise jurisdiction over a personal injury arising from the hotel guest's fall
in Las Vegas. The contacts here are much less continuous than those in Dawson. 

 The record in this case establishes that: (1) Double Eagle is a resident of Colorado;
(2) operates its hotel in Colorado; (3) has no employees in Texas; (4) has no office, registered
agent, or property in Texas; and (5) is not authorized to do business in Texas. Based on the
special appearance evidence showing a trickle of business through Double Eagle's online
reservation system, the Motts argue that Double Eagle's contacts are sufficient to support the
trial court's exercise of jurisdiction. We disagree. The mere fact that a website permits
customers to make reservations does not show continuous and systematic contacts between
Double Eagle and Texas. See Reiff v. Roy, 115 S.W.3d 700, 706 (Tex. App.-Dallas 2003,
pet. denied) (hotel's providing directions and allowing customers to make reservations
through internet website insufficient to show continuous contacts); AmQuip Corp., 73
S.W.3d at 388 (creation and maintenance of an internet website is not, by itself, sufficient
to support a finding favoring jurisdiction by a Texas court). 

 As the court noted in Helicopteros, "mere purchases, even if occurring at regular
intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a
nonresident corporation in a cause of action not related to those purchase transactions." 
Helicopteros, 466 U.S. at 418. "[S]tream-of-commerce jurisdiction requires a stream, not
a dribble." Michiana, 168 S.W.3d at 786. In this case, Double Eagle's economic activity
related to Texas is less frequent and less continuous than that shown in Helicopteros. 
Therefore, we find the evidence of Double Eagle's contacts with Texas insufficient to
support the trial court's determination that it had general jurisdiction over Double Eagle.


Conclusion

 Double Eagle's infrequent business in Texas does not support the trial court's
assertion of personal jurisdiction over a claim arising from a fall in Colorado. Further, the
Motts' claim does not arise out of Double Eagle's contacts in Texas. We hold that Double
Eagle carried its burden to negate all bases of personal jurisdiction. Because we hold that
the trial court erred in denying Double Eagle's special appearance, we find it unnecessary to
address whether traditional notions of fair play and substantial justice are violated by the trial
court's assertion of jurisdiction.

 We reverse the judgment of the trial court and render judgment granting a special
appearance in favor of Double Eagle, dismissing it from this case.

 REVERSED AND RENDERED.

 ____________________________

 HOLLIS HORTON

 Justice


Submitted on January 11, 2007

Opinion Delivered February 15, 2007

Before McKeithen, C.J., Gaultney and Horton, JJ.